McQUEEN v GREAT MARKWESTERN PACKING COMPANY

Docket No. 55568. Argued October 4, 1977 (Calendar No. 10).—Decided February 27, 1978.

Grover McQueen was awarded workmen's compensation benefits against Great Markwestern Packing Company, a self-insured employer. At the time of the plaintiff's injury the employer had a policy of reinsurance for aggregate workmen's compensation benefits exceeding the reinsured's "retention amount", which equalled the annual premium for the policy, with defendant Commercial Union Assurance Companies, also known as American Employers Insurance Company. The defendant employer filed a petition for reorganization under chapter XI of the Bankruptcy Act while the plaintiff's claim was pending, before the effective date of the Self-Insurers' Security Fund act, 1971 PA 149. The question on appeal is which of the defendants is liable for payment of the workmen's compensation benefits awarded. The Workmen's Compensation Appeal Board found that the Self-Insurers' Security Fund was liable. The Court of Appeals, T. M. Burns, P. J., and V. J. Brennan and Van Valkenburg, JJ., reversed on the ground that 1971 PA 149 does not apply retroactively (Docket No. 15697). The Supreme Court granted leave to appeal and remanded to the Workmen's Compensation Bureau to determine whether an insurance carrier is liable for the benefits awarded. 391 Mich 823 (1974). The Workmen's Compensation Appeal Board found that Commercial Union Assurance Companies' liability begins when the employer's accrued liability exceeds the retention amount, and

REFERENCES FOR POINTS IN HEADNOTES
[1] 9 Am Jur 2d, Bankruptcy §§ 414, 415.
    82 Am Jur 2d, Workmen's Compensation § 652.
[2] 73 Am Jur 2d, Statutes § 350.
    81 Am Jur 2d, Workmen's Compensation § 34.
[3] 82 Am Jur 2d, Workmen's Compensation § 650.
[4] 82 Am Jur 2d, Workmen's Compensation § 605.
[5] (no reference)
[6] 81 Am Jur 2d, Workmen's Compensation § 44.
[7] 82 Am Jur 2d, Workmen's Compensation § 478.
[8] 82 Am Jur 2d, Workmen's Compensation § 663.

that any benefits accruing before the reinsurer's liability begins are subject to the bankruptcy proceedings. Plaintiff appeals. In an opinion by Justice Coleman, signed by all of the Justices, it was *held:*

1. Plaintiff's claim against his employer remains valid despite the petition for reorganization under the Bankruptcy Act. However, the claim does not receive a priority and it is unlikely in the instant case that the plaintiff will recover the full award from the employer.

2. Statutes ordinarily are prospective in application unless the contrary clearly appears from the context of the statute itself. Because the Self-Insurers' Security Fund act, which establishes new substantive rights, does not appear to provide for retroactive application from the context of the act itself, the act does not apply to a self-insured employer who becomes insolvent before the effective date of the act.

3. Commercial Union Assurance Companies had a contract to reinsure the defendant employer for workmen's compensation benefits exceeding the retention amount. The Workmen's Compensation Appeal Board correctly found that the employer's accrued workmen's compensation liability rather than the actual payment of benefits determined when the reinsurer's payments would commence. The reinsurance contract cannot be rewritten to impose upon the reinsurer an obligation to pay benefits when the accrued liability was less than the retention amount which it had not agreed to assume and which is not statutorily required of a self-insured employer.

4. Any insurance contract to secure an employer's liability under the Worker's Disability Compensation Act must comply with the act. However, neither the act nor case law requires that any insurance policy also secure the liability retained by an employer as a self-insurer. Therefore, the workmen's compensation benefits accruing to the plaintiff before the effectiveness of the reinsurer's liability are subject to the bankruptcy proceedings.

An opinion by Justice Williams, also signed by all of the Justices, set forth a ten-step formula by which the Workmen's Compensation Appeal Board might equitably apportion the benefits available from the reinsurer among all workers' compensation claimants to avoid the result that the first claimants would have only a claim against the bankrupt employer until the retention amount was exhausted, while later claimants would be compensated fully by the reinsurer. The proposed solution recognizes that the reinsurer is entitled to have compensation liability exhausted to the retention amount before it

is liable to pay any compensation and that the liability for so exhausting the retention amount should be borne equally by all claimants, not according to the reverse order of prosecuting claims. It also makes provision for handling new claims and extensions of old claims to preserve the equality of burden among the claimants.

Affirmed and remanded to the Workmen's Compensation Appeal Board for further proceedings.

Opinion of the Court

1. Workmen's Compensation—Benefits—Bankruptcy.

A worker's claim for workmen's compensation benefits remains valid despite his employer's petition for reorganization under the Bankruptcy Act; however, such claims do not receive a priority.

2. Statutes—Construction—Prospective Application.

Statutes ordinarily are prospective in application unless the contrary clearly appears from the context of the statute itself.

3. Workmen's Compensation—Self-Insurers' Security Fund Act— Prospective Application.

The Self-Insurers' Security Fund act, which establishes new substantive rights and does not appear to provide for retroactive application from the context of the act itself, does not apply retroactively to an employee whose employer became insolvent before its effective date, November 16, 1971 (1971 PA 149, § 537; MCL 418.537; MSA 17.237[537]).

4. Workmen's Compensation—Self-Insured Employers—Reinsurance.

The Worker's Disability Compensation Act does not require an authorized self-insurer to purchase any additional workmen's compensation insurance coverage.

5. Workmen's Compensation—Self-Insured Employers—Reinsurance.

Courts cannot properly rewrite a contract between a self-insured employer and its reinsurer to impose on the reinsurer an obligation to pay certain workmen's compensation benefits which it did not agree to assume and which is not statutorily required of a self-insurer.

6. Workmen's Compensation—Self-Insured Employers—Reinsurance.

Any insurance contract to secure wholly or in part the employer's

liability incurred under the terms of the Worker's Disability Compensation Act must comply with the act; however, neither the act nor case law requires that any insurance policy also secure the liability retained by an employer as a self-insurer (MCL 418.621[2]; MSA 17.237[621][2]).

CONCURRING OPINION

7. WORKMEN'S COMPENSATION—SELF-INSURED EMPLOYERS—REINSUR-
    ANCE.

   The Workmen's Compensation Appeal Board should equitably apportion the benefits available from a reinsurer among all workers' compensation claimants of a self-insured employer which has become insolvent to avoid the result that the first claimants would have only a claim against the bankrupt employer until the retention amount was exhausted, while later claimants would be compensated fully by the reinsurer.

8. WORKMEN'S COMPENSATION—SELF-INSURED EMPLOYERS—REINSUR-
    ANCE.

   A reinsurer of a self-insured employer is entitled to have the workers' compensation liability of the employer exhausted to the retention amount in the contract of reinsurance before it is liable to pay any compensation.

*McCroskey, Libner, VanLeuven, Kortering, Cochrane & Brock* (by *Edward M. Welch, Jr.)* for plaintiff.

*Franklin, Petrulis & Lichty, P. C.,* for defendants Great Markwestern Packing Company and Commercial Union Assurance Companies.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Eileen D. Zielesch,* Assistant Attorney General, for defendant Self-Insurers' Security Fund.

COLEMAN, J. Plaintiff is entitled to worker's compensation benefits for an injury which occurred November 18, 1970 while he was working for Great Markwestern Packing Company (GMP), a

self-insured employer. GMP filed a petition for reorganization under Chapter XI of the Federal Bankruptcy Act on October 1, 1971 while plaintiff's petition for benefits was pending and prior to the November 16, 1971 effective date of the Self-Insurers' Security Fund (SISF) act (1971 PA 149). At the time of the injury, GMP had a policy of aggregate excess workmen's compensation insurance with Commercial Union Assurance Companies (CU) also known as American Employers Insurance Company. The question before us is how Mr. McQueen's benefits are to be paid.

## I. History of Claim

Plaintiff's petition for compensation benefits was heard by the referee on February 21, 1972. The referee found as a matter of fact that plaintiff had been injured and was disabled. In addition, the referee found as a matter of law that SISF was liable. SISF appealed to the Michigan Workmen's Compensation Appeal Board (WCAB), which affirmed. SISF thereupon appealed to the Court of Appeals and a panel of that Court reversed the WCAB and held that 1971 PA 149 was wholly nonretroactive in application.

Plaintiff then appealed to this Court, claiming that subsequent to the Court of Appeals opinion, he had discovered the aggregate excess insurance coverage by CU. He also filed a motion for remand. We granted leave to appeal and remanded to the Workmen's Compensation Bureau to determine whether an insurance company was in existence which was liable for plaintiff's award of compensation.

The order provided further that "if necessary" the cause should be certified "to this Court for appropriate proceedings". 391 Mich 823 (1974).

The referee found CU to be liable, citing *Federoff v Ewing*, 386 Mich 474; 192 NW2d 242 (1971).

The WCAB modified this finding by holding that CU's liability did not begin until GMP's accrued liability exceeds the reinsured's retention amount. "Any sums accruing to plaintiff" prior to this "[are] subject to the bankruptcy proceedings of [GMP] and/or Supreme Court review of the Court of Appeals holding".

Three proposals have been presented by the parties as possible sources of compensation.

## II. GREAT MARKWESTERN PACKING CO.

First, plaintiff can recover from GMP. His claim remains valid despite GMP's petition for reorganization under Chapter XI of the Federal Bankruptcy Act. 11 USC 701 *et seq.* See 9 Am Jur 2d, Bankruptcy, § 414. However, such claims do not receive a priority. *Id,* §§ 536, 537. Even if plaintiff recovers, it is unlikely he would receive a dollar for each dollar due.

## III. SELF-INSURERS' SECURITY FUND

Plaintiff argues a second source of recovery in the Self-Insurers' Security Fund (SISF), created to provide payments for "a disabled employee who * * * is entitled to receive workmen's compensation benefits from a private self-insured employer who becomes insolvent after the effective date of this section and is unable to continue the payments". MCLA 418.537(1); MSA 17.237(537)(1). GMP became insolvent October 1, 1971. Because the legislation was effective November 16, 1971, the question of retroactive application arises.

When plaintiff presented his claim, the hearing referee and the WCAB ordered the SISF to pay

benefits. The Court of Appeals reversed.[1] It said the statutory language "operates as a limitation upon the authority * * * to make disbursements from the [f]und".

Plaintiff argues that MCLA 418.537(2); MSA 17.237(537)(2) acts as a grandfather clause by permitting payments to "an employee * * * disabled * * * while in the employ of a private self-insured employer who has become insolvent". He claims subsection (1) applies to insolvencies after the effective date and subsection (2) applies to those before the effective date.[2]

The Court of Appeals found this construction "to be untenable". Such an analysis

"would require this Court to first hold that the Legislature specifically created two different classes of employees in subsection (1), and then hold the Legislature intended that the distinction so emphatically delineated in subsection (1) was of no consequence. Surely had the Legislature intended that all disabled employees of self-insured employers should have a right to claim against the Fund irrespective of when their employers became insolvent, the Legislature would not have used the language of limitation found in subsection (1)".

The Court said "subsection (1) defines the class of employees covered * * * while subsection (2) sets

---

[1] 51 Mich App 246, 249; 214 NW2d 882 (1974).

[2] "Sec. 537. (1) The trustees may authorize payments from the self-insurers' security fund upon request to the fund's administrator by a disabled employee who is receiving or is entitled to receive workmen's compensation benefits from a private self-insured employer who becomes insolvent after the effective date of this section and is unable to continue the payments.

"(2) If an employee becomes disabled because of a compensable injury or disease while in the employ of a private self-insured employer who has become insolvent and who is unable to make compensation payments, the employee may seek payment from the self-insurer's security fund either by request through the fund's administrator or by filing a petition for hearing with the bureau." MCLA 418.537; MSA 17.237(537).

forth the manner in which said employees shall file their claims against the [f]und". 51 Mich App 250–251.

The Attorney General, for SISF, supports the Court of Appeals conclusion and says:

"In the creation of the SISF and in the subsequent enactment of Act 149, the Legislature did *not* disturb any of the pre-existing rights and liabilities, under Federal or state laws, between the employee and the insolvent self-insured employer.

"The employee may still present his claim in either the state or Federal insolvency proceedings or take whatever other legal action may be appropriate to satisfy the insolvent self-insured employer's liability to him.

"To the existing rights and remedies, the Legislature gave a *new,* but *limited, statutory option* to the employees to shift present and future compensation liability of the insolvent self-insured employer to the Self-Insurers' Security Fund. The statute requires, however, that the *employee* must request the payment of benefits. MCLA 418.537(2), and 418.537(3) [MSA 17.237(537)(2), 17.237(537)(3)].

"The fund submits that the creation of the fund and its method of financing by assessing present self-insured employers provides a substantive right to those employees whose compensation claims are within the limited authority of the trustees to make payments from the fund."

Because it is a settled rule of statutory construction that statutes ordinarily are prospective in application unless "the contrary clearly appears from the context of the statute itself"[3] and because it does not appear that this statute establishing new substantive rights so provides, we hold that it is not retroactive.

---

[3] See discussion in *Briggs v Campbell, Wyant & Cannon Foundry Co,* 379 Mich 160, 164; 150 NW2d 752 (1967).

## IV. Commercial Union Assurance Companies

The third possible source of recovery is the Commercial Union Assurance Companies (CU) which had contracted to reinsure GMP at the time of plaintiff's injury.[4] CU agreed to reimburse GMP for payments such as workmen's compensation if the total payments in a year exceeded the "reinsured's retention"—a figure equal to the annual premium.

The contract contained 18 conditions, number 11 of which provides:

"In the event of bankruptcy or insolvency of the reinsured which prevents the reinsured from making any payment * * * the company will make such payment directly and on behalf of the reinsured and * * * any payment so made by the company shall be a full and final discharge of any liability on the part of the company to the reinsured in respect to such payment; *provided, however, the company shall be under no liability whatsoever to make any such direct payment or part thereof, which would not be in excess of the reinsured's retention* * * * . In the event the company makes any such direct payment, it shall be subrogated, to the extent of such payment, to all rights of recovery therefor of any person entitled to such payment against any person or organization." (Emphasis added.)

Payments include "the amount the reinsured shall have actually paid * * * for compensation and other benefits required of the reinsured by the workmen's compensation law". Upon remand, the WCAB found that the accrued liability, rather than actual payment of the retention amount, provided the threshold beyond which CU's payments would commence.

The panel discussed the *Federoff* case upon

---

[4] See, generally, 44 Am Jur 2d, Insurance, §§ 1857–1867.

which plaintiff now strongly relies in arguing that CU is responsible for all of the benefits awarded to him.

*Federoff* involved claims by employees who were receiving benefits. The employer's insurer, Highway Insurance Company, became insolvent. Highway's reinsurer, Peerless Insurance Company, refused to pay the employees directly because the reinsurance contract said "actual payment * * * by [Highway] * * * shall be a condition precedent to" Peerless' obligation. Otherwise, "the liability of the reinsurer shall follow that of [Highway]". In other words, no matter how much was owed to plaintiff, if the employer's insurer could not make actual money payment, plaintiff never would be paid anything by the reinsurance company.

Our Court said the "Highway-Peerless reinsurance contract * * * is governed by and subject to judicial enforcement in strict accord with the purpose, the declared public policy, and the express language" of our workmen's compensation act. 386 Mich 479. The Court emphasized this language now found in MCLA 418.621(1); MSA 17.237(621)(1).

"Every contract for the insurance of the compensation provided in this act for or against liability therefore, shall be deemed to be made subject to the provisions of this act and provisions inconsistent with this act are void."

*Federoff* was explained in *Woody v American Tank Co,* 49 Mich App 217, 229; 211 NW2d 666 (1973):

"[S]ince the reinsurer was admittedly on the risk, over and above payments by the defunct primary in-

surer, the exculpatory language in the reinsurance contract was void."

In our case, the WCAB said *Federoff* does not increase the "life" of the liability covered by a reinsurance contract. CU's liability does not come to life until GMP's accrued liability exceeds the reinsured's retention.

We agree with the WCAB that *Federoff* is inapposite to the case at bar.

The WCAB opinion refers also to MCLA 418.621(2); MSA 17.237(621)(2)[5] which is argued to opposite conclusions by plaintiff and CU.

Plaintiff maintains it is a principle of Michigan

---

[5] In part, that section provides:

"The accident fund and every insurer issuing an insurance policy *to cover any employer not permitted to be a self-insurer* under section 611 shall insure, cover, and protect in one and the same insurance policy, all the businesses, employees, enterprises, and activities of the employer. * * * Except as modified by the director as provided for herein, each policy of insurance covering workmen's compensation in this state shall contain the following provisions:

" 'Notwithstanding any language elsewhere contained in this contract or policy of insurance, the accident fund or the insurer issuing this policy hereby contracts and agrees with the insured employer:

" 'Compensation. (a) That it will pay to the persons that may become entitled thereto all workmen's compensation for which the insured employer may become liable under the provisions of the Michigan workmen's compensation act for all compensable injuries or compensable occupational diseases happening to his employees during the life of this contract or policy;

* * *

" 'Obligations assumed. (f) That it hereby assumes all obligations imposed upon the employer by his acceptance of the Michigan workmen's compensation act, as far as the payment of compensation, death benefits, medical, surgical, hospital care or medicine and rehabilitation services is concerned;

* * *

" 'Conflicting provisions. (h) That all the provisions of this contract, if any, which are not in harmony with this paragraph are to be construed as modified hereby, and all conditions and limitations in the policy, if any conflicting herewith are hereby made null and void.' " (Emphasis added.)

law "that the relationship between the injured worker and the insurer is governed by statute rather than by the contract of insurance" and urges us to hold that the mandatory contract provisions of MCLA 418.621(2); MSA 17.237(621)(2) apply to every workmen's compensation insurance contract including reinsurance. Plaintiff also points to MCLA 418.651; MSA 17.237(651) which gives "the person entitled to * * * compensation * * * the right to enforce in his own name * * * the liability of any insurance company * * * who may have insured, in whole or in part, the liability for such compensation".

CU argues that its policy with GMP is not subject to MCLA 418.621(2); MSA 17.237(621)(2) because that section does not apply to self-insurers. CU acknowledges its reinsurance obligation once GMP's accrued liability exceeds the reinsured's retention amount. However, CU argues vigorously that it should not be treated as a primary insurer.

Also spotlighted is the fact that the statute does not require an authorized self-insurer to purchase any additional workmen's compensation insurance coverage. The reinsurance contract covering GMP's liabilities over a basic (retention) amount was initially voluntary. If GMP had not so contracted with CU, plaintiff would have no legal recourse to any benefits excepting those from the employer through the bankruptcy proceedings.

CU maintains with merit that we cannot properly rewrite its contract with GMP to impose upon CU an obligation which it never agreed to assume and which is not statutorily required of a self-insurer.

The WCAB reached the proper decision. It said any insurance contract "to secure in whole or in

part the employer's liability incurred under the terms of the Worker's Disability Compensation Act" must comply with MCLA 418.621(2); MSA 17.237(621)(2). However, neither this nor *Federoff* means that "any policy of insurance * * * does insure and protect the employee when the employer is financially unable to pay the claim". In *Federoff,* the life of the liability had begun; here, it has not:

"When a policy is issued only as security of a part of the liability incurred by the employer * * * we find no authority in the statute or case law which permits this appeal board to modify that contract to hold that it also secures the liability retained by the employer as a self-insurer."

The board held that the "liability retained by the employer must accrue to activate and give 'life' to" the reinsurance policy. The compensation "accruing to plaintiff prior to the effective period of the liability * * * is subject to the bankruptcy proceedings * * * and/or Supreme Court review of the Court of Appeals holding".

## V. Summary

No one contests plaintiff's right to compensation. If the SISF or CU were ordered to pay him, each would be subrogated to his claim against GMP. However, such an order would, in the one instance, corrupt the statute and, in the other, re-write a contract.

We have an "innocent" plaintiff. We also have "innocent" defendants.

The Legislature chose not to make 1971 PA 149 retroactive, so plaintiff does not qualify for benefits deriving from the fund established by it.

CU is not attempting to evade its responsibilities. It only asks that we not impose upon it obligations which it never contracted to assume and which are not mandated by statute.

Plaintiff retains a bankruptcy remedy against GMP. In addition, when GMP's accrued liabilities exceed the reinsured's basic retention, CU will pay benefits awarded to plaintiff.[6]

The case is remanded to the WCAB for further proceedings consistent with this opinion.

Affirm and remand.

KAVANAGH, C. J., and WILLIAMS, LEVIN, FITZGERALD, RYAN, and BLAIR MOODY, JR., JJ., concurred with COLEMAN, J.

WILLIAMS, J. Our Sister Justice COLEMAN has correctly set forth the law in this case, but consideration of implementation of this Court's decision is in order. This case requires a judicial solution to a loophole in the worker's compensation program, namely the fate of an injured worker for a self-insured employer who becomes insolvent before 1971 PA 149, which established the Self-Insurers' Security Fund to remedy this problem.

Plaintiff worker suffered a compensable injury November 18, 1970, while working for defendant employer Great Markwestern Packing Company. Defendant employer was a self-insured employer. However, he had a policy of aggregate excess worker's compensation insurance with defendant reinsurer, The Commercial Union Assurance Companies.

Plaintiff employee filed for benefits February 2,

---

[6] CU may already have begun to pay. At the time of oral argument, it was agreed that the aggregate liabilities of GMP had almost reached the contracted level of retention.

1971 and was determined disabled February 23, 1972. In the meantime defendant employer filed for bankruptcy October 1, 1971.

There are two problems in this case. The first problem is that the Self-Insurers' Security Fund did not go into effect until November 16, 1971, shortly after defendant employer filed in bankruptcy. The Court of Appeals held the fund's benefits to be available only to those injured employees whose "private self-insured employer * * * becomes insolvent after the effective date of this [act]". The second problem is that defendant employer had not paid out in worker's compensation benefits an amount equal to the retention amount in his policy of aggregate excess "reinsurance" with defendant reinsurer.

As to the first problem, our Sister Justice Coleman's affirmance of the Court of Appeals correctly interprets that the Legislature intended 1971 PA 149 to be prospective only. This, unfortunately, for plaintiff employee removes the Self-Insurers' Security Fund as a source of relief, but the Legislature quite clearly indicated the benefits of 1971 PA 149 to be prospective.

As to the second problem, it may be well to suggest how plaintiff employee, the Worker's Compensation Appeal Board and defendant reinsurer may resolve the problem confronting them; simply stated the plaintiff employee's inability to receive compensation benefits in light of his self-insured employer's insolvency and the employer's reinsurer not knowing when, whom or how to pay compensation benefits because defendant employer had not exhausted his retained liability. The problem would be minimal, if any, had defendant self-insured employer paid compensation benefits up to his retained liability, for at that point defendant

reinsurer would become liable and would pay each and all subsequent claimants in full.

The problem is the determination of when, whom and how to pay compensation benefits under these circumstances, where defendant reinsurer is liable only for benefits exceeding the retained liability of the now insolvent employer.

Let us begin by examining plaintiff employee's comment on the appeal board's formula to resolve this problem. His brief states:

"The appeal board suggested that the basic problem should be solved by having the Workers' Compensation Bureau calculate the point in time at which the retention amount would have been reached, after which Commercial Union [the reinsurer] should begin paying benefits. * * * The solution suggested by the appeal board would result in an unwieldy litigation in which each claimant attempted to prove that his rights accrued later than the rights of the other claimants."

What plaintiff employee is suggesting can best be shown by example. Let us suppose the retention amount or the residue of the retention amount after deduction of the self-insured employer's payments before insolvency stood at $100,000, and there were ten employee claimants, each with a $20,000 claim. According to plaintiff employee's reading of the WCAB opinion, the first five employees to seek benefits would be relegated to claims in bankruptcy, because it would take their total of $100,000 in claims to exhaust the retention amount, whereas the next five employees to seek benefits, because the retention amount had been exhausted, could recover in full their claims from defendant reinsurer. If that is what the WCAB formula provides, it is indeed inequitable and poor policy because (1) the first five might get

10 cents on the dollar on their claims whereas the second five would get 100 cents on the dollar on their claims, and (2) this would create a situation favoring the laggard and hence promoting total inaction with nobody getting anything, which is about where we now are.

Whether or not this is what the WCAB had in mind, the argument clearly focuses on the problem to be met.

The solution we propose recognizes (1) that the reinsurer is entitled to have compensation liability exhausted to the retention amount before it is liable to pay any compensation; and (2) the liability for so exhausting the retention amount should be borne equally by all claimants, *not* according to *reverse* order of prosecuting claims.

A suggested ten-point program follows:

1. Upon remand, the WCAB shall determine what the retention amount is in dollars and cents. The WCAB opinion states the amount to be equal to 100% of the normal premium cost of insurance. Non-official evidence suggests this amount to be $295,217.03. The WCAB shall determine exactly what it is.

2. The WCAB shall determine what amount the defendant employer has paid in claims for worker's compensation benefits.

3. The WCAB shall subtract the second figure from the first and determine the residue of retained liability. The WCAB opinion quotes the senior claims supervisor of defendant reinsurer estimating this amount at $96,000.

4. Thereupon, the WCAB shall, as indicated in its opinion, proceed to "remand this matter to the Director of the Bureau with a recommendation that a special effort be made to isolate all active claims filed against Great Markwestern [defendant

employer] and any subsidiaries under its umbrella of self insurance coverage". Whether the WCAB also contacts Corporate Service, Inc., to determine this amount (as the WCAB opinion suggests), is within its discretion and is nothing this Court can order.

5. The WCAB shall adjudicate those claims which are unadjudicated within a period of 60 days or such reasonable time as the board shall prescribe, but no longer than four months.

6. The WCAB shall thereupon determine the value of all known claims as of that date. Since that date will be between six and seven years since the period reinsured, a large part, if not most, of the burden of liability will have accrued.

7. The WCAB shall compare the total liability for benefits as established in point six with the residue of retained liability as established in point three. If the total liability for benefits at that point is in excess of the residue of retained liability, defendant reinsurer shall immediately be liable for compensation benefit payments to every eligible claimant as hereinafter described.

8. Defendant reinsurer shall pay adjudicated compensation benefits to each eligible claimant on the following ratio of the value of such judgments. The adjudicated value of each individual judgment shall be multiplied by the ratio of the total liability for benefits, as established in point six, minus the residue of retained liability, as established in point three, to the total liability as established in point six. The formula could be expressed as follows:

$$RL \quad = \quad IBJ \quad \times \quad \frac{TKBL - R}{TKBL}$$

RL is reinsurer's liability; IBJ is individual benefit

judgment; TKBL is total known benefit liability; R is residue of retained liability.

To look again at the example of ten claimants, each with a $20,000 claim and $100,000 residue of retained liability:

$$RL = IBJ\ (\$20,000) \times \frac{TKBL\ (\$200,000) - R\ (\$100,000)}{TKBL\ (\$200,000)}$$

or

$$RL = \$20,000 \times \frac{\$100,000}{\$200,000}$$

$$RL = \$20,000 \times 1/2$$

$$RL = \$10,000$$

The net result is that all ten claimants get $10,000 apiece or $100,000 in total. The remaining $100,000 is credited against the retained residue and becomes a claim against the insolvent defendant employer.

9. Any compensation benefits earned subsequent to the determination of the total known liability as of the date established in point six, because of a new claim or extension of an old one, shall be paid to the claimant according to the same formula established in point eight, even though the retained liability has been exhausted. The reason for this is to preserve the equality of burden in paying off the retained liability. However, since the retained liability is paid off, defendant reinsurer will pay the difference between the amount to be paid to the individual claimant and the claimant's full adjudicated entitlement to a special fund in the Workers' Compensation Commission dedicated to all of defendant employer's worker's compensation beneficiaries subsequent to insolvency. This fund shall be paid to all such beneficiaries proportionately to their total entitlement at such times as the Worker's Compensation Commission or its designee deems appropriate.

10. The WCAB shall request the Workers' Compensation Commission to designate a person to act as guardian for all of defendant employer's injured employees with worker's compensation claims affected by its insolvency. This guardian shall supervise the fund set up by point nine and shall pursue all such workers' claims in the bankruptcy court. There is no specific provision in the worker's compensation act or 1971 PA 149, but equity and the remedial intention of the Legislature certainly warrants this action. I would mandate it inasmuch as the individual injured workers can hardly be required to make themselves whole when the circumstances are the result of the commission's failure to exercise perfect judgment in the grant of the self-insurance privilege.

As an example of how all ten steps would work, let us assume that the retention amount is $300,-000 *(vide* point 1 *supra),* that defendant employer during the reinsurance period had paid $200,000 on claims before insolvency and that the residue of the retention amount is $100,000 *(vide* point 3 *supra)* and that after insolvency there are ten $20,000 claims on the computation date. With these hypothetical facts, this is the way the suggested formula would work.

1. WCAB determines total retention amount is $300,000.

2. WCAB determines defendant employer paid $200,000.

3. WCAB subtracts $200,000 from $300,000 = $100,000.

4. WCAB finds ten $20,000 claims outstanding.

5. WCAB adjudicates those claims worth $20,000 each as of the date of adjudication.

6. WCAB determines the total value of all known claims as of that date as $200,000.

7. WCAB comparing total value of all known claims, $200,000 with the residue of retained liability $100,000 finds the value of claims higher than the retained residue and therefore liability of defendant reinsurer is triggered.

8. Defendant reinsurer shall pay each individual benefit judgment according to the formula in eight above:

$$RL = IBJ \times \frac{TKBL - R}{TKBL}$$

or

$$RL = \$20,000 \times \frac{\$200,000 - \$100,000}{\$200,000}$$

or

$$RL = \$20,000 \times 1/2 = \$10,000$$

9. Suppose further that subsequent to working out this original phase of the formula, ten additional eligible claims of $20,000 are adjudicated. Then,

a) defendant reinsurer would pay each additional claimant $20,000 × 1/2, or $10,000, or $100,000 to all;

b) defendant reinsurer would pay 10 × $10,000 or $100,000 to the Workers' Compensation Commission's special dedicated fund;

c) at an appropriate time, the special dedicated fund would determine that there were 40 $20,000 benefit entitlements extant or $400,000 and that it had $100,000 in the fund. Since each claimant had the same total entitlement of $20,000, each would receive 20,000/400,000 or 1/20 of the fund or 1/20 × $100,000 or $5,000. Each beneficiary, both the original and the newer ones, would then get a $5,000 dividend, therefore receiving a total $15,000 for each $20,000 adjudication. Each of the 20 would share proportionately in bearing the burden of liquidating the retained liability. The defendant

reinsurer would not have paid any compensation without the residue of the retained liability being paid;

d) the same result would ensue if the ten original $20,000 claims had each been extended by $20,000, or any combination.

10. The guardian would direct the fund actions described in 9(c). In addition the guardian would pursue the interests of all 40 claimants in the bankruptcy court.

## Conclusion

To summarize, we agree with the legal conclusions reached by our Sister Justice Coleman, but would in remanding to the WCAB suggest that it consider the above ten-point formula or something like it to equitably recognize the reinsurer's rights and the rights of all the worker's compensation claimants subsequent to the employer's insolvency.

Kavanagh, C. J., and Levin, Coleman, Fitzgerald, Ryan, and Blair Moody, Jr., JJ., concurred with Williams, J.