Dr. Stuart LEFF, Dr. David Segel, Bi-County Foot Surgeons, P.C., Dr. Jerome Levine and Associates in Podiatry of Detroit, P.C., Plaintiffs,

v.

NAC AGENCY, INC., Leonard Zimmerman, Freemont Indemnity Company, Republic Insurance Company, Cherokee Insurance Company and Podiatry Service and Information League, Defendants.

No. 85–CV–72352–DT.

United States District Court,
E.D. Michigan, S.D.

July 23, 1986.

Randall Phillips, Southfield, Mich., for plaintiffs.

Richard Weber, Detroit, Mich., Robert Harkness, Southfield, Mich., Bruce Vandevusse, Detroit, Mich., for defendant.

## MEMORANDUM OPINION AND ORDER

ZATKOFF, District Judge.

This is a suit for declaratory and monetary relief involving certain contracts of professional liability insurance. Plaintiffs are doctors of podiatry who claim that they unknowingly bought policies of liability insurance from insurers that were financially unsound and, in addition, were unlicensed to issue insurance in the State of Michigan. The vast array of defendants include the insurers and their reinsurers as well as the insurance brokerage companies and agents thereof. *See* Appendix. The case is presently before the Court on the following motions:

1. Defendant Republic's motion for summary judgment.
2. Defendant Freemont's motion for summary judgment.
3. Defendant Cherokee's motion to dismiss.
4. Defendant Zimmerman's motion to dismiss or, alternatively, for summary judgment.
5. Plaintiffs' motion to extend discovery.

The Court will address these motions *seriatim*.

Summary judgment is appropriate where no genuine issue of material fact remains to be decided and the moving party is entitled to judgment as a matter of law. *Blakeman v. Mead Containers,* 779 F.2d 1146 (6th Cir.1985); Fed.R.Civ.P. 56(c). In applying this standard, the Court must view all materials offered in support of a motion for summary judgment, as well as all pleadings, depositions, answers to interrogatories, and admissions properly on file in the light most favorable to the party opposing the motion. *Arnett v. Kennedy,* 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974); *United States v. Diebold,* 368 U.S. 894, 82 S.Ct. 171, 7 L.Ed.2d 91 (1962); *Smith v. Hudson,* 600 F.2d 60 (6th Cir. 1979), *cert. dismissed,* 444 U.S. 986, 100 S.Ct. 495, 62 L.Ed.2d 415 (1979).

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the complaint. *Elliot Co., Inc. v. Caribbean Utilities Co., Ltd.,* 513 F.2d 1176 (6th Cir.1975). When evaluating a 12(b)(6) motion, the Court must regard the factual allegations in the complaint as true. *Windsor v. The Tennessean,* 719 F.2d 155 (6th Cir.1983). The claim should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

Initially, defendants Republic and Freemont assert entitlement to summary judgment based upon their undisputed status as reinsurers. Plaintiffs, they claim, have no

direct, legal right of action against them since the contract of reinsurance is between the reinsurers and the primary insurer to which the plaintiffs are not privy. Defendants also argue that plaintiffs are not third party beneficiaries of the reinsurance contract. The Court agrees.

■ At the outset, it must be determined what law governs the construction and interpretation of the subject reinsurance contracts. Federal courts follow the choice of law rules of the state in which they sit. *Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Michigan choice of law rules require that the nature and effect of a contract are to be determined by the law of the situs or place where the contract was entered into. *Douglass v. Paine*, 141 Mich. 485, 104 N.W. 624 (1905); *Wells v. 10–X Mfg. Co.*, 609 F.2d 248 (6th Cir.1979). However, if the contract is to be "performed" in a different state, then the law of the latter state governs. *George Realty Co. v. Gulf Refining Co.*, 275 Mich. 442, 266 N.W. 411 (1936); *Liberty Mutual Ins. Co. v. Vanderbush Sheet Metal Co.*, 512 F.Supp. 1159 (E.D. MI 1981).

In this case, the place of performance is uncertain at best. The subject reinsurance agreements are general indemnification contracts whereby the reinsurers agree to repay to the primary insurer, Pacific, a certain percentage of claims actually allowed or paid by Pacific. *See* plaintiffs' brief in opposition to defendants' motion for summary judgment, p. 5. As such, being *general* indemnification contracts, potential indemnity extends to *all* prospective paid or allowed claims, not merely those which arise out of Michigan occurrences or claimants. *Cf. Federoff v. Ewing*, 29 Mich.App. 1, 10–11, 185 N.W.2d 79 (1970), *vacated on other grounds*, 386 Mich. 474, 192 N.W.2d 242 (1971) (reinsurance contract covering prospective Michigan Workmen's Compensation liability governed by Michigan Law.) Such a generalized obligation to pay is not easily localized in any one state.

■ In a situation such as this, then, where the place of "performance" is unclear, the better approach is to apply the law of the state which would most likely give effect to the intent of the parties. *Liberty Mutual Ins. Co., supra* at 1168–69. Here, that state would be California, the place where the reinsured insurer, Pacific, executed the reinsurance policies offered by the reinsurers. Pacific would have most likely insisted on the resolution of reinsurance disputes according to California law had the parties contemplated a choice of law clause. Otherwise, Pacific would have subjected itself to the potentially inconsistent adjudication of rights among outstate reinsurers. Additionally, because of the favorable treatment of reinsurers under California law (i.e., obligations limited to those in contractual privity), the Court assumes that the reinsurers would not have objected to Pacific's presumed insistence upon a California choice of law provision. Thus, the Court will apply California law.

■ A reinsurance contract is, generally speaking, a type of indemnity agreement.

Reinsurance is a special form of insurance obtained by insurance companies to help spread the burden of indemnification. A reinsurance company typically contracts with an insurance company to cover a specified portion of the insurance company's obligation to indemnify a policyholder in the event of a valid claim. The excess insurance, as it is called, enables the insurance companies to write more policies than their reserves would otherwise sustain since its (sic) guarantees the ability to pay a part of all claims. The reinsurance contract is not with the insured/policyholder. When a valid claim is made, the insurance company pays the first level insured, and the reinsurance company pays the insurance company. The reinsurance company's obligation is to the insurance company, and the insurance company vis-a-vis the reinsurer is thus the insured, or more appropriately the "reinsured."

*Excess & Casualty Reinsurance Association v. Insurance Commissioner of California*, 656 F.2d 491, 492 (9th Cir.1981) (footnote omitted). Moreover, a contract of reinsurance benefits only the original insurer and does not confer any right upon the original insured. Couch on Insurance 2d, § 80.1 *et seq.* The original insurer is the only party having any right against the reinsurer and the reinsurance contract is merely one to indemnify the original insurer. *Id.* § 80.69. *Accord, China Union Lines, Ltd. v. American Marine Underwriters, Inc.*, 755 F.2d 26, 30 (2d Cir.1985).

■ Similarly, in California an original insured has no interest in a contract of reinsurance. Cal. Ins. Code § 623. Specifically, "[t]he original insured or policyholder [does] not have any rights against the reinsurer which are not specifically set forth in the contract of reinsurance, or in a specific agreement between the reinsurer and the original insured or policyholder." *Id.* § 922.2. This being so, the plaintiffs have no direct cause of action against the reinsurers herein.[1]

■ Moreover, plaintiffs' assertion of a third party beneficiary theory is inapplicable to the case at bar. Since the reinsurance contracts confer upon plaintiffs no entitlement to *direct* payment from the reinsurers, plaintiffs are mere incidental beneficiaries and, hence, not true third party beneficiaries. *See American Re-Insurance Co. v. Insurance Commission of California*, 527 F.Supp. 444, 453–54 (C.D. Cal. 1981); *accord, Rieth-Riley Construction Co., Inc. v. Department of Transportation*, 136 Mich.App. 425, 357 N.W.2d 62

(1984). Plaintiffs' reliance on this theory, therefore, is ill-founded.

Accordingly, for the above reasons, summary judgment will enter in favor of defendants Republic and Freemont.[2] Likewise, for the same reasons, this case is dismissed as to defendant Cherokee.[3]

■ The Court next turns to defendant Zimmerman's motion to dismiss. In his motion, Zimmerman, an officer of two of the primary defendants, argues that the Court has no personal jurisdiction over him. Zimmerman argues that he has insufficient "minimum contacts" with the State of Michigan and, even if he had certain contacts, that his actions were in a corporate, not individual, capacity and that, therefore, no personal jurisdiction exists. Plaintiffs have failed to file a response in opposition to defendant's motion as directed by Local Rule 17(g).

Since this is a diversity case, state law determines whether a defendant is subject to personal jurisdiction. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). The Michigan "long-arm" statute sets forth the circumstances under which nonresidents may be subjected to suit in this state.

The existence of any of the following relationships between an individual or his agent and estate shall constitute a sufficient basis of jurisdiction to enable a court of record of this state to exercise limited personal jurisdiction over the individual and to enable the court to render personal judgments against the individual or his representative arising out of an

---

1. Even if the Court were to have applied Michigan law, as plaintiffs urge, this result would not change. Michigan recognizes that the validity of a reinsurance agreement cannot be determined without the presence of the contracting parties. *Glover v. Diggs*, 368 Mich. 430, 433, 118 N.W.2d 278 (1962). More importantly, however, is that Michigan recognizes only one exception to the general rule prohibiting a direct action against a reinsurer. This exception, however, only encompasses insurance contracts for Workmen's Compensation which are "unlike in distinctive respect the contracts of reinsurance [involved in other contexts]." *Federoff v. Ewing*, 386 Mich. 474, 479, 192 N.W.2d 242 (1971);

*see also McQueen v. Great Markwestern*, 402 Mich. 321, 262 N.W.2d 820 (1978).

2. Insofar as plaintiffs' complaint may be construed as stating a claim in tort, the Court finds no duty owing from the reinsurers to plaintiffs as a matter of law.

3. The Court notes that defendant Cherokee is a reinsurer similarly situated as defendants Republic and Freemont. Since the Court finds no cause of action against the reinsurers as a matter of law, it is unnecessary to reach the merits of Cherokee's jurisdictional argument.

act which creates any of the following relationships:

(1) The transactions of any business within the state.

(2) The doing or causing an act to be done, or consequences to occur, in the state resulting in an action for tort.

M.C.L.A. § 600.705. The "transaction of any business within the state" is interpreted by Michigan courts to mean "just what it says" and contemplates "each and every" contact including the "slightest" contact. *Sifers v. Horen,* 385 Mich. 195, 199 n.2, 188 N.W.2d 623 (1971); *Lazzaro v. Charlevoix Lakes,* 108 Mich.App. 120, 310 N.W.2d 295 (1981). The Michigan Supreme Court has further said that the personal jurisdiction of courts should be expanded to their "full potential," subject only to the constraints of the Due Process Clause of the Federal Constitution. *See Sifers, supra* 385 Mich. at 198, 188 N.W.2d 623. *But see Woodward v. Keenan,* 88 Mich.App. 791, 279 N.W.2d 317 (1979) (restrictive application of due process jurisdictional limitations).

The Due Process Clause of the Fourteenth Amendment permits personal jurisdiction over a defendant whenever the defendant has "sufficient contacts or ties with the state of the forum to make it reasonable and just" to require the nonresident to come into the forum and defend the lawsuit. *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). In determining whether sufficient contacts exist, a court properly focuses on "the relationship among the defendant, the forum, and the litigation." *Shaffer v. Heitner,* 433 U.S. 186, 204, 97 S.Ct. 2569, 2580, 53 L.Ed.2d 683 (1977). The Due Process Clause is not offended where the defendant has "purposefully availed itself of the privilege of conducting activities within the forum state," *Hanson*

*v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958) *reh'g denied* 358 U.S. 858 (1958), or has "purposefully directed" his activities at residents of the forum. *Keeton v. Hustler Magazines, Inc.,* 465 U.S. 770, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984).

In this case, the Court finds no evidence of record indicating that defendant Leonard Zimmerman has had sufficient minimum contacts with Michigan so as to subject him to the personal jurisdiction of this court. On the one hand, it is true that interstate contractual relationships may be subject to the regulations and sanctions of the relevant states under appropriate circumstances. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 105 S.Ct. 2174, 2182, 85 L.Ed.2d 528 (1985).[4] Here, however, the affidavits submitted by defendant indicate that Zimmerman was never involved with the brokerage activities of NAC Agency, Inc. and had no responsibility for the procurement or administration of the policies at issue here. (Zimmerman Aff., Leeds Aff.) Moreover, the affidavits indicate that Zimmerman never personally solicited professional liability insurance or made representations concerning the financial viability of the insurance agencies herein. *Id.* Lastly, the affidavits indicate that Zimmerman had no role in the formation or operations of the alleged "subterfuge" corporation, the Podiatry Service and Information League, Ltd. *Id.* Significantly, these affidavits remain unopposed by plaintiffs notwithstanding the completion of over one year's worth of discovery.[5] Where the moving defendant has supported his motion with affidavits and other documents, the plaintiffs may not rest on the mere allegations or denials of their pleadings, but must set forth specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e); *Davis v. Robbs,* 794 F.2d 1129 (6th

---

**4.** The mere *existence* of an interstate contract, however, is insufficient to establish minimum contacts in and of itself. *Rudzewicz,* 105 S.Ct. at 2185. *See generally,* Ankers, *Civil Procedure, 1986 Ann. Survey of Mich. Law,* 32 Wayne L. Rev. 281 (1986).

**5.** It should also be noted that this is the second time defendant Zimmerman has moved the

Court for dismissal. On October 10, 1985, Judge Robert E. DeMascio denied Zimmerman's motion to dismiss without prejudice, to allow plaintiffs an opportunity to gain discovery in order to substantiate their claims of individual wrongdoing on the part of Zimmerman. Since that time, Zimmerman has been deposed and has answered interrogatories and requests for admission.

Cir.1986). Plaintiffs have not done so in this case.

Moreover, the mere fact that Zimmerman may be a corporate officer of one or more of the primary defendants is, by itself, insufficient for personal jurisdiction. In its most recent pronouncement on the subject, the Supreme Court held that, although employee status is not an automatic insulation from jurisdiction, individual minimum contacts with the forum must be established. *Calder v. Jones,* 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984); *accord, Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, n.13, 104 S.Ct. 1473, n. 13, 79 L.Ed.2d 790 (1984); *Donovan v. Grim Hotel,* 747 F.2d 966 (5th Cir.1984) *cert. denied,* —— U.S. ——, 105 S.Ct. 2654, 86 L.Ed.2d 272 (1985); *Thomson McKinnon Securities, Inc. v. Hamiltonian Industries, Inc.,* 610 F.Supp. 5 (S.D. NY 1985). Mere allegations of untargeted negligence are insufficient. *Calder, supra.*

In this case, notwithstanding significant discovery, plaintiffs have failed to demonstrate that sufficient minimum contacts exist between the individual defendant, Zimmerman, and the forum. Rather, plaintiffs' claims are more akin to "untargeted negligence" and unsubstantiated concluso-ry allegations which are subject to dismissal. *Bryant v. Kentucky,* 490 F.2d 1273, 1275 (6th Cir.1974); *Echols v. Voisine,* 506 F.Supp. 15, 19 (E.D. MI 1979) (Harvey, J.); *aff'd* 701 F.2d 176 (6th Cir.1982); *Easley v. Board of Regents,* 632 F.Supp. 1539, 1542 (E.D. MI 1986) (Feikens, J.).

Accordingly, defendant Zimmerman's motion to dismiss is hereby GRANTED, for lack of personal jurisdiction.

Insofar as plaintiffs' motion to extend discovery is concerned, the same was extended by the Court at the June 23, 1986 status conference. As such, this motion is DENIED as moot.

In summary then, the following relief shall enter:

1. Defendant Republic's motion for summary judgment is GRANTED.

2. Defendant Freemont's motion for summary judgment is GRANTED.

3. Defendant Cherokee's motion to dismiss is GRANTED.

4. Defendant Zimmerman's motion to dismiss or, alternatively, for summary judgment is GRANTED.

5. Plaintiffs' motion to extend discovery is DENIED as moot.

IT IS SO ORDERED.

## APPENDIX 1 …

| | | |
|---|---|---|
| REINSURERS | FREEMONT | REPUBLIC | CHEROKEE |

CLAIM ADJUSTER — EXCELSIOR

PRIMARY INSURERS

BERCANUS INS. CO. INSURER UNLICENSED IN MICH. INSOLVENT

PACIFIC AMER. INS. CO. INSURER UNLICENSED IN MICH. INSOLVENT

BROKERS/ AGENTS

I'NTL UNDERWRITERS AGENCY, INC.

NAC AGENCY

PSIL LEAGUE MASTER POLICY HOLDER FOR PACIFIC & BERCANUS

President — Officer

ZIMMERMAN UNLICENSED

Plf.  Plf.  Plf.  Plf.  Plf.  Plf.