STATE OF MICHIGAN
COURT OF APPEALS

ACE AMERICAN INSURANCE COMPANY and
PACIFIC EMPLOYERS INSURANCE
COMPANY,

       Plaintiffs-Appellees/Cross-
       Appellants,

v

WORKERS' COMPENSATION
AGENCY/DIRECTOR,

       Defendant,

and

DOUGLAS GREEN, Trustee, MICHAEL T.
REID, Trustee, and KEVIN ELSENHEIMER,
Trustee,

       Defendants-Appellants/Cross-
       Appellees.

UNPUBLISHED
February 17, 2015

No. 317501
Court of Claims
LC No. 12-000096-MM

ACE AMERICAN INSURANCE COMPANY and
PACIFIC EMPLOYERS INSURANCE
COMPANY,

       Plaintiffs-Appellees/Cross-
       Appellants,

v

WORKERS' COMPENSATION
AGENCY/DIRECTOR,

       Defendant-Appellant/Cross-
       Appellee,

and

DOUGLAS GREEN, Trustee, MICHAEL T.

No. 317569
Court of Claims
LC No. 12-000096-MM

-1-

REID, Trustee, KEVIN ELSENHEIMER, Trustee,

> Defendants.

---

Before:  K. F. KELLY, P.J., and SAWYER and METER, JJ.

PER CURIAM.

In these consolidated cases, defendants appeal as of right from an order of the Court of Claims granting plaintiffs' motion for summary disposition under MCR 2.116(C)(9) (failure to state a valid defense) and (10) (no genuine issue of material fact).  We affirm.

This dispute arose when two workers' compensation insurers failed to properly identify the employer they insured on several Form 400[1] notifications submitted to the Workers' Compensation Agency (WCA).  Between May 28, 1999, and October 6, 2009, Delphi Corporation was a WCA-approved self-insured employer in Michigan.  Between October 2001 and July 2009, with the exclusion of one year between October 1, 2002, and October 1, 2003, Delphi secured multi-state insurance policies from plaintiffs Pacific Employers Insurance Company and ACE American Insurance Company to cover several of its subsidiaries that were not qualified as self-insurers.  Although the insurance policies covered only Delphi's subsidiaries, plaintiffs inaccurately listed Delphi as the insured employer on the Form 400s submitted to the WCA.

In 2005, Delphi filed for bankruptcy.  Generally, when a self-insured employer becomes insolvent, employees claiming workers' compensation benefits may receive payments from the Self-Insurers' Security Fund (SISF) under MCL 418.537(1).  However, on July 14, 2009, the WCA and the SISF Funds Administration submitted an objection to the bankruptcy court, announcing plaintiffs' possible liability to Delphi employees in place of the SISF's liability.  The following day, the WCA sent plaintiffs notice of their potential liability.

On October 6, 2009, the bankruptcy court discharged all of Delphi's workers' compensation obligations under a plan of reorganization.  On the day of discharge, plaintiffs filed an adversary complaint in the bankruptcy court against Delphi, the SISF, and the WCA.  While the bankruptcy court considered plaintiffs' adversary claims, the WCA director scheduled a Rule 5 compliance hearing to determine whether plaintiffs were liable on Delphi's 180 outstanding workers' compensation claims due to the errors on the original Form 400s.  Thereafter, plaintiffs requested that this Court take superintending control over the matter and dismiss the Rule 5 hearing.  In response, the bankruptcy court issued the following stay order:

---

[1] See §625 of the Worker's Disability and Compensation Act (WDCA), MCL 418.101 *et seq.*

The Michigan Workers' Compensation Agency and the Michigan Funds Administration shall not seek alternative relief in respect to ACE American Insurance Company's and/or Pacific Employers Insurance Company's potential liability for workers' compensation coverage of Delphi Corporation or Delphi Automotive Systems Corporation, in Michigan, or in any other forum, and no proceeding or action with respect to such alternative relief shall proceed in any material way . . . .

Eventually, the bankruptcy court determined it had jurisdiction to decide the Form 400 issue. However, on appeal, the United States Court of Appeals for the Second Circuit held that although the bankruptcy court had jurisdiction to decide the scope of the policies between Delphi and plaintiffs, it did not have jurisdiction to decide plaintiffs' liability for filing the inaccurate Form 400s. In response, the bankruptcy court lifted its stay order on August 10, 2012, and released the Form 400 issue for further proceedings in a Michigan forum. Three days later, plaintiffs initiated this action in the Court of Claims.

We review de novo a lower court's grant of summary disposition, *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999), as well as whether a court has subject-matter jurisdiction over a claim, *Sierra Club Mackinac Chapter v Dep't of Environmental Quality*, 277 Mich App 531, 544; 747 NW2d 321 (2008).

Defendants argue that the one-year statute of limitations governing suits against the state bars plaintiffs' claims. Under MCL 600.6431(1), a claimant may not maintain a claim against the state unless the claimant files "either a written claim or a written notice of intention to file a claim" within one year after the claim has accrued. "'[T]he time at which the claim accrues for purposes of applying [a statute of limitations] depends on the type of relief sought.'" *Tenneco Inc v Amerisure Mut Ins Co*, 281 Mich App 429, 455; 761 NW2d 846 (2008), quoting *Taxpayers Allied for Constitutional Taxation v Wayne Co*, 450 Mich 119, 128 n 10; 537 NW2d 596 (1995). Generally, a claim accrues in accordance with MCL 600.5827, which states: "Except as otherwise expressly provided, the period of limitations runs from the time the claim accrues. . . . [A]nd in cases not covered by [MCL 600.5829 to 600.5838] the claim accrues at the time the wrong upon which the claim is based was done regardless of the time when damage results." However, when a suit for injunctive or declaratory relief seeks to prevent a future wrong, the cause of action must necessarily arise before the wrong occurs. See *Taxpayers Allied*, 450 Mich at 127.

Specifically addressing how statutes of limitation apply to claims for declaratory relief, the Michigan Supreme Court has instructed:

"Limitations statutes do not apply to declaratory judgments as such. Declaratory relief is a mere procedural device by which various types of substantive claims may be vindicated. There are no statutes which provide that declaratory relief will be barred after a certain period of time. Limitations periods are applicable not to the form of the relief but to the claim on which the relief is based." [*Id*. at 128, quoting *Luckenbach Steamship Co v United States*, 312 F2d 545, 548 (CA 2, 1963).]

-3-

Claims for declaratory relief are "not merely [claims] for abstract declarations of rights divorced from a factual context." *Taxpayers Allied*, 450 Mich at 128.

When a claimant pursues an action for declaratory relief after a substantive harm has already occurred, "[d]eclaratory relief may not be used to avoid the statute of limitations for substantive relief." *Id*. at 129. However, when a claimant uses a claim for declaratory relief as a shield from a threat of future or potential harm, "the statute of limitations [does] not bar an otherwise valid claim for declaratory relief because it would derive from a claim for injunctive relief, which is not barred." *Id*.

In the instant case, plaintiffs' claims for declaratory relief were not based on a substantive harm that had already occurred because defendants had not yet required plaintiffs to pay any workers' compensation claims for Delphi employees. Defendants argue that the July 2009 notice sent to plaintiffs by the WCA caused plaintiffs' claim to accrue because it put them on notice of potential liability. However, this notice implied only the existence of a potential future liability for Delphi employees' claims. Moreover, the bankruptcy court specifically prohibited defendants from pursuing any substantive legal action against plaintiffs before August 10, 2012, through the stay order issued during Delphi's bankruptcy proceeding. Because plaintiffs' claims for declaratory relief were premised on a threat of future harm, the Court of Claims correctly held that the one-year statute of limitations found in MCL 600.6431(1) did not bar plaintiffs' claims.

Defendants next argue that the Court of Claims lacked subject-matter jurisdiction to hear plaintiffs' claims. MCL 418.841(1) provides:

> Any dispute or controversy concerning compensation or other benefits shall be submitted to the bureau and *all questions arising under this act shall be determined by the bureau or a worker's compensation magistrate*, as applicable. The director may be an interested party in all worker's compensation cases in questions of law. [Emphasis added.]

Yet, under MCL 600.6419(1)(a), the Court of Claims retains exclusive[2] subject-matter jurisdiction over the following:

> To hear and determine any claim or demand, statutory or constitutional, liquidated or unliquidated, ex contractu or ex delicto, or any demand for monetary, equitable, or *declaratory relief* or any demand for an extraordinary writ *against the state or any of its departments* or officers notwithstanding another law that confers jurisdiction of the case in the circuit court. [Emphasis added.]

Also, "[t]he court of claims does not have jurisdiction of any claim *for compensation* under . . . [t]he worker's disability compensation act of 1969." MCL 600.6419(3)(a) (emphasis added).

---

[2] There are certain exceptions. See MCL 600.6419(1).

Defendants contend that MCL 600.6419(3)(a) bars plaintiffs' claims because this case involves a defense to claims "for compensation." Because the WDCA does not define the word "compensation" for purposes of the statutory scheme, we will consider the plain meaning of the word. See *McCormick v Carrier*, 487 Mich 180, 192; 795 NW2d 517 (2010). In this endeavor, we turn to the dictionary to aid us in determining its "common meaning." *Id*. at 195. *Random House Webster's College Dictionary* (1997) defines "compensate," in relevant part, as "to recompense for something" and defines "compensation," in relevant part, as follows:

**1.** the act of compensating. **2.** the state of being compensated. **3.** something given or received for services, debt, loss, injury, etc.; indemnity; reparation; payment.

Although the ultimate resolution of this case will have an ancillary effect on who is liable to pay workers' compensation claims, neither plaintiffs nor defendants asserted a claim for reparation or payment before the Court of Claims. Allowing any claim affecting liability to bar the jurisdiction of the Court of Claims would expand the meaning of the statutory phrase "for compensation" beyond its plain and ordinary meaning. Plaintiffs' claims were not claims "for compensation" barred by MCL 600.6419(3)(a).

Defendants argue that the WCA possesses exclusive jurisdiction over this matter because the claims arose under the WDCA. We have stated that "'where it is obvious that the cause of action is not based on the employer/employee relationship,'" the WCA does not retain exclusive jurisdiction over claims potentially involving the WDCA. *Zarka v Burger King*, 206 Mich App 409, 411; 522 NW2d 650 (1994), quoting *Buschbacher v Great Lakes Steel Corp*, 114 Mich App 833, 838; 319 NW2d 691 (1982). We note that the instant case does not implicate any issues involving an employer-employee relationship and instead turns on the scope of two insurers' contracts and liability. In addition, the Michigan Supreme Court has held that pursuant to MCL 600.6419(1)(a), the Court of Claims has exclusive jurisdiction over all "contract-based claim[s] for declaratory relief against a state agency" and over all declaratory-judgment actions against the state that "involve contract . . . ." *Parkwood Ltd Dividend Housing Ass'n v State Housing Dev Auth*, 468 Mich 763, 772-773; 664 NW2d 185 (2003). Here, plaintiffs sought declaratory relief against the state, asserting that they were not liable to Delphi employees under either their original contracts with Delphi subsidiaries or any statutory contracts allegedly created by the improper filing of Form 400s. Considering all the circumstances, we conclude that plaintiffs' claims for declaratory relief against the state vested the Court of Claims with jurisdiction.

Finally, defendants assert that MCL 418.625, read in harmony with the rest of the WDCA, creates insurer liability with respect to all information listed on a Form 400. When interpreting statutes, the primary goal of the judiciary is to ascertain and give effect to the intent of the Legislature. *Neal v Wilkes*, 470 Mich 661, 665; 685 NW2d 648 (2004). "This task begins by examining the language of the statute itself." S*un Valley Foods Co v Ward*, 460 Mich 230, 236; 596 NW2d 119 (1999). "When the Legislature has unambiguously conveyed its intent in a statute," judicial interpretation is neither necessary nor permitted. *Koontz v Ameritech Servs, Inc*, 466 Mich 304, 312; 645 NW2d 34 (2002). Thus, a court may go beyond the words of the statute to ascertain legislative intent only where the statutory language is ambiguous. *Sun Valley*, 460 Mich at 236. In interpreting the impact of statutory language, we consider the plain meaning of the words at issue and their placement and purpose in the statutory scheme." *Id*. at 237.

When an employer chooses to use a third-party insurer under the WDCA (see MCL 418.611[1][b]), MCL 418.625 requires the insurer to file a Form 400:

> Each insurer . . . issuing an insurance policy covering worker's compensation in this state shall file with the director, within 30 days after the effective date of the policy, a notice of the issuance of the policy and its effective date. A notice of issuance of insurance, a notice of termination of insurance, or a notice of employer name change may be submitted in writing or by using agency-approved electronic filing and transaction standards and may be submitted by the insurer directly or by the compensation advisory organization of Michigan on behalf of the insurer. . . .

MCL 418.621(1) requires that "[e]very contract for the insurance of the compensation . . . shall be subject to the provisions of the act and provisions inconsistent with [the] act are void." Defendants argue that because an insurer that files a Form 400 with the WCA certifies that their coverage complies with the WDCA, the Form 400, rather than the insurance policy, creates or destroys the reality of coverage.

As noted above, MCL 418.625 requires insurers to file "a notice of the issuance of the policy . . . ." *Random House Webster's College Dictionary* (2000) defines "notice," in pertinent part, as follows:

> **1.** information, warning, or announcement of something impending; notification: *to give notice of one's intentions*. **2.** a written or printed statement conveying such information or warning: *to post a notice*. **3.** a notification by one of the parties to an agreement, as for employment, that the agreement will terminate on a specified date: *She gave her employer two-weeks' notice*. [Emphasis in original.]

The word "notice" indicates an announcement, warning, or information about some other item. Thus, the Legislature distinguished between the mandated notice of issuance of insurance and the underlying policy of insurance. Accordingly, the function of a Form 400 is to indicate, inform, or announce the existence of an underlying insurance obligation, but not to create that obligation.

Moreover, MCL 418.625 does not require an insurer to file a Form 400 until "30 days after the effective date of the policy . . . ." Thus, the Legislature understood that an insurance policy becomes effective and enforceable prior to and independent of an insurer filing a Form 400. Although defendants correctly recognize that an underlying policy of insurance may be involuntarily altered based on the requirements of the WDCA, it does not follow that this possibility of statutory alteration somehow creates a statutory contract through the filing of a Form 400.

Defendants also argue that in *Zielke v A J Marshall Co*, 306 Mich 474; 11 NW2d 209 (1943), and *Burhans v Central States Produce Corp*, 313 Mich 124; 20 NW2d 835 (1945), the Michigan Supreme Court held that the forms filed with the WCA, and not the underlying policies of insurance, determined the scope of insurance coverage. *Zielke* and *Burhans* are distinguishable from the present case because both involved situations where an underlying insurance policy at some point in time covered the allocated risk. Further, in the years following

*Zielke* and *Burhans*, the Michigan Supreme Court has come to different conclusions. See, e.g., *McQueen v Great Markwestern Packing Co*, 402 Mich 321; 262 NW2d 820 (1978) (holding that the WDCA did not permit a court to expand certain insurance coverage that did not exist in an underlying policy), and *Kenney v AAA Delivery Serv*, 391 Mich 454; 216 NW2d 760 (1974) (holding that an insurer was not liable on a claim merely for failing to file a notice of termination at a certain time).

Defendants also contend that if a Form 400 is merely a mechanism of notice and does not create statutory liability, the WCA will be unable to enforce the WDCA without reviewing every insurance policy of the nearly 240,000 employers in Michigan. Where the meaning of a statute can be determined by its plain language, we will not consider extrinsic evidence or contrary policy arguments to ascertain legislative intent. See *People v Haynes*, 281 Mich App 27, 29; 760 NW2d 283 (2008) (setting forth the general rules of statutory construction). Plaintiffs were not liable to Delphi employees simply because of the filing of inaccurate Form 400s.

Having determined that a Form 400 does not create contractual liability, we need not address plaintiffs' arguments on cross-appeal.

Affirmed.

/s/ Kirsten Frank Kelly
/s/ David H. Sawyer
/s/ Patrick M. Meter