SIFERS v. HOREN

OPINION OF THE COURT

1. COURTS—JURISDICTION OVER NONRESIDENTS—LONG-ARM STATUTE.
The Michigan long-arm statute represents an attempt on the part of the Michigan legislature to expand to its full potential limited personal jurisdiction of Michigan courts over nonresidents    (MCLA § 600.705).

REFERENCES FOR POINTS IN HEADNOTES

[1–9,11] 20 Am Jur 2d, Courts § 121 *et seq.*
42 Am Jur, Process § 78.
Construction and application of state statutes or rules of court predicating in personam jurisdiction over nonresidents or foreign corporations on making or performing a contract within the state. 23 ALR3d 551.
Construction and application of state statutes or rules of court predicating in personam jurisdiction over nonresidents or foreign corporations on the commission of a tort within the state. 24 ALR3d 532.
[3] 20 Am Jur 2d, Courts § 146.
[10] 7 Am Jur 2d, Attorneys at Law §§ 8–11.
[12] 7 Am Jur 2d, Attorneys at Law § 3.

2. COURTS—JURISDICTION OVER NONRESIDENTS—LONG-ARM STATUTE
—CONSTITUTIONAL LAW.

The Michigan long-arm statute uses the phrase "the transaction
of *any* business within the state" and provides limited juris-
diction which exposes a nonresident to suit in Michigan only
for a cause which arose out of the relationship serving as a
basis for such jurisdiction and there is no Federal constitu-
tional question involved (MCLA § 600.705).

3. WORDS AND PHRASES—TRANSACTION OF ANY BUSINESS—DOING
BUSINESS.

The phrase "transaction of any business" is construed as broader
than "doing business".

4. COURTS—JURISDICTION OVER NONRESIDENTS—LONG-ARM STATUTE
—NEGOTIATIONS—ATTORNEY AND CLIENT—RETAINER.

Negotiations in Michigan resulting in an attorney's retainer
come within the concept of the transaction of "any" business
as provided in the Michigan long-arm statute (MCLA
§ 600.705).

#### DISSENTING OPINION

#### T. E. BRENNAN AND SWAINSON, JJ.

5. COURTS—JURISDICTION OVER NONRESIDENTS—LONG-ARM STATUTE
—COMMERCIAL TRANSACTIONS.

*The legislature, in enacting the long-arm statute, has attempted
to provide Michigan residents a local remedy for injuries
arising out of solicitation by out-of-state concerns for a
wide variety of products and services (MCLA § 700.705).*

6. COURTS—JURISDICTION OVER NONRESIDENTS—TORTS—LONG-ARM
STATUTE—ATTORNEY AND CLIENT.

*The section of the long-arm statute, concerning "the doing or
causing any act to be done, or consequences to occur, in the
state resulting in an action for tort", appears to be directed
at providing redress for tort injuries caused by out-of-state
manufacturers and not for cases involving an attorney-client
relationship (MCLA § 600.705[2]).*

7. COURTS—JURISDICTION OVER NONRESIDENTS—LONG-ARM STATUTE
—DUE PROCESS—RESIDENTS OF STATE—TORTS.

*The long-arm statute does not mean, and cannot consistently with
due process provisions mean, that any time an act occurs
affecting a Michigan resident there are consequences in the*

state, granting jurisdiction over the tortfeasor *(MCLA § 600.705).*

8. COURTS—JURISDICTION OVER NON-RESIDENTS—LONG-ARM STATUTE —ATTORNEY AND CLIENT—MALPRACTICE.

*There is no jurisdiction in the Michigan courts under the section of the long-arm statute, concerning "the doing or causing any act to be done, or consequences to occur, in the state resulting in an action for tort", where plaintiff brought a malpractice action against his Kentucky attorney for failure to perfect his appeal in a Kentucky court, as the injury did not occur in the state of plaintiff's residence (MCLA § 600.705[2]).*

9. COURTS—JURISDICTION—INTERSTATE COMMERCE.

*Precisely because there has been a tremendous increase in interstate commerce and interstate contacts, the courts must give consideration to the question of fairness in deciding jurisdictional questions, and necessarily decisions must be reached on a case-by-case basis (MCLA § 600.705).*

10. ATTORNEY AND CLIENT—STATES—STATUTES—RULES.

*Within its territorial boundaries, each state, by statute or rule, governs the practice of law, a profession distinguished by its uniqueness from all other endeavors, and an attorney cannot practice law in any state without first being authorized to do so in compliance with the statute or rules governing such matters.*

11. COURTS—JURISDICTION OVER NONRESIDENTS—LONG-ARM STATUTE —DOING BUSINESS—CONTACTS WITHIN STATE—ATTORNEY AND CLIENT.

*Contacts within the State of Michigan are insufficient to meet the requirements of doing business under the Michigan long-arm statute, where defendant, a Kentucky attorney, appeared in Michigan upon two separate occasions to lecture at seminars of lawyers and the contract of employment between plaintiff and defendant was executed in Kentucky, as it would violate the precept of fundamental fairness to allow jurisdiction over the defendant in Michigan (MCLA § 600.705[1]).*

12. ATTORNEY AND CLIENT.

*The relationship of attorney and client is not one of a commercial nature but a professional one.*

Appeal from Court of Appeals, Division 2, Levin, P. J., and Holbrook and Bronson, JJ., affirming

Jackson, Gordon W. Britten, J.   Submitted March
4, 1971.   (No. 38 January Term 1971, Docket No.
52,769.)   Decided July 7, 1971.

22 Mich App 351 affirmed.

Complaint by Letha Sifers, administratrix of the
estate of Roger W. Sifers, deceased, against H. Sol-
omon Horen for malpractice.   Defendant's motion
for accelerated judgment denied.   Defendant ap-
pealed to the Court of Appeals.   Plaintiff cross-ap-
pealed to the Court of Appeals.   Affirmed.   Defend-
ant appeals.   Affirmed.

*Kelly, Kelly & Kelly,* for plaintiff.

*Anderson, Patch, Potter & Patch,* for defendant.

T. G. KAVANAUGH, J.   We are called upon in this
case to construe a Michigan statute which represents
an attempt on the part of the Michigan legislature
to expand to its full potential *limited* personal juris-
diction of Michigan courts over nonresidents.[1]

Unless we are prepared to say that Michigan is
forbidden by the Federal Constitution to exercise
jurisdiction to the extent indicated in the statute we
should not construe the statute so restrictively.

The statute uses the phrase "The transaction of
*any* business within the state."   (Emphasis added.)
When we keep in mind that we are dealing not with
*general* jurisdiction which is provided for in another
part of the statute (MCLA § 600.701 [Stat Ann 1962
Rev § 27A.701]) which would expose a nonresident
to suit in Michigan for any cause wherever it arose,

---

[1] See Commentaries by Professor Carl S. Hawkins and authorities
cited therein to chapter 7 RJA, MCLA p 329 and to MCLA § 600.705,
p 343.

but rather with *limited* jurisdiction which exposes a nonresident to suit in Michigan only for a cause which arose out of the relationship serving as a basis for such jurisdiction we see no Federal Constitutional question.

The courts of those states having "long-arm" statutes similar to that of Michigan which confer, specifically, limited personal jurisdiction over defendants based on "the transaction of any business within the state," have generally construed their statutes as extending the state's jurisdiction to the farthest limits permitted by due process.

*Colorado: Safari Outfitters, Inc.* v. *Superior Court of Denver* (1968), 167 Colo 456 (448 P2d 783); *Illinois: Koplin* v. *Thomas* (1966), 73 Ill App 2d 242 (219 NE2d 646); *Ziegler* v. *Hodges* (1967), 80 Ill App 2d 210 (224 NE2d 12); *Tennessee: The Hamilton National Bank of Chattanooga* v. *Russell* (ED Tenn, 1966), 261 F Supp 145.

The phrase "transaction of any business" is construed as broader than "doing business". *New York: Simonson* v. *International Bank* (1964), 14 NY2d 281 (251 NYS2d 433, 200 NE2d 427); *Illinois: Lurie* v. *Rupe* (1964), 51 Ill App 2d 164 (201 NE2d 158), *cert den* 380 US 964 (85 S Ct 1108, 14 L Ed 2d 154); *Haas* v. *Fancher Furniture Company* (ND Ill, 1957), 156 F Supp 564.

It can scarcely be doubted that the negotiations in Michigan resulting in defendant's retainer come within the concept of the transaction of "any"[2] business.

Neither does any valid basis for distinction for

---

[2] The word "any" means just what it says. It includes "each" and "every". See *Harrington* v. *Inter-State Business Men's Accident Ass'n* (1920), 210 Mich 327; *Gibson* v. *Agricultural Life Ins. Co. of America* (1937), 282 Mich 282. It comprehends "the slightest".

this consideration appear from the fact that the retainer involved a professional relationship.

In my view the Court of Appeals correctly analyzed the case and applied the sounder rule.

I vote to affirm.

T. M. Kavanagh, C. J., and Black, Adams, and Williams, JJ., concurred with T. G. Kavanagh, J.

Swainson, J. (*dissenting*). This case involves the construction to be given to the Michigan long-arm statute (MCLA § 600.705, subdivisions [1] and [2] [Stat Ann 1962 Rev § 27A.705, subdivisions (1) and (2)]). The statute provides in pertinent part:

"The existence of any of the following relationships between an individual or his agent and the state shall constitute a sufficient basis of jurisdiction to enable the courts of record of this state to exercise limited personal jurisdiction over such individual and to enable such courts to render personal judgments against such individual or his representative arising out of the act or acts which create any of the following relationships:

"(1) The transaction of any business within the state.

"(2) The doing or causing any act to be done, or consequences to occur, in the state resulting in an action for tort."

The parties stipulated to an agreed statement of facts. We adopt, and partially set forth, this statement of facts from *Sifers* v. *Horen* (1970), 22 Mich App 351, 352–354:

" 'Defendant is a resident of and a duly-licensed attorney-at-law in the state of Kentucky, who, in May, 1963, appeared at a seminar of lawyers at Saginaw, holding himself out to be a specialist in personal injury and negligence law and practice, and lectured to Michigan lawyers on the subject, said seminar continuing for some three days.

" 'The attorney for plaintiff in this cause, who had been retained by plaintiff in the original case, which was required to be filed in Kentucky, conferred with defendant at Saginaw as to the claim for death of plaintiff's son and, upon defendant's representations that he was fully qualified and competent to represent plaintiff in the courts of Kentucky in such action, retained defendant for such purpose, by letter agreement dated November 7, 1963, a copy of which is hereto attached and marked Exhibit E.[1]

" 'After said defendant had filed the action in the Kentucky court, he again appeared in Michigan at a seminar of Michigan lawyers on personal injury law, this time at Detroit and, at his request, the attorney for plaintiff went to Detroit with plaintiff and her husband, where they met with defendant,

---

[1]                *"EXHIBIT E*

                                    "November 7, 1963
"Mr. Solomen H. Horen
"Kentucky Home Life Building
"Louisville 2, Kentucky
"Re: *Estate of Roger Wesley Sifers, Deceased*
"Dear Mr. Horen:
    "This letter will confirm our telephone conversation of this date, that you are to file suit immediately, in behalf of the Estate of Roger Wesley Sifers, Deceased, against Gerald C. Lester, in the State Court of Jefferson County at Louisville, Kentucky, for $150,000.00 damages, for the death of said Roger Wesley Sifers, and to proceed, as soon as permitted by the rules, to discover the insurance coverage of the motor vehicle which Lester operated in the accident, Lester's status in relation to Irish O'Brien Sales Company and all other information necessary or useful in determining further action in the matter.
    "You agree to use your best personal efforts, in the prosecution of this case to a conclusion at as early a date as possible, for a contingent fee of 1/3 of recovery, after deduction of necessary costs and expenses, by settlement or judgment, said fee to be shared equally between your office and this office.
    "If the foregoing meets with your approval, kindly sign below and return one copy to this office.
                        "Yours very truly,
                        "KELLY, KELLY AND KELLY
                        "By *Phillip C. Kelly* /s/
"PCK:ns
    "The foregoing agreement is hereby accepted.
                        *"/s/ H. S. Horen*
                        "Solomen H. Horen"

who discussed the pending case with them, preparing their testimony, and advising them concerning their case, as attorney for plaintiffs, in preparation for the trial thereof.

" 'The case was tried at Louisville, Kentucky, in December, 1965, in the course of which trial, plaintiff claims defendant in the case offered to pay plaintiff the sum of $27,500 in settlement of the claim for death of her son, which offer defendant Horen advised plaintiff should not be accepted and, acting upon such advice, the settlement offer was rejected and a verdict was thereafter returned for defendant in said action and judgment entered thereon.

" 'Defendant filed an appeal from said judgment, but thereafter failed to take the necessary steps in prosecuting said appeal in accordance with the rules and laws of the state of Kentucky governing such appeals, which failure was concealed from the attorney for plaintiff by the refusal of defendant to answer written inquiries made to defendant in June, July, September, October and December, 1966, during which time defendant, by his inaction and refusal to inform plaintiff's attorney thereof, allowed the rights of plaintiff in said appeal to lapse and plaintiff's attorney learned, from the Kentucky Court of Appeals, in February, 1967, that said appeal had been dismissed on October 11, 1966.

" 'On April 14, 1967, plaintiff filed suit against defendant in the circuit court for the county of Jackson, Michigan, to recover damages claimed to have been sustained by decedent's estate as the result of defendant's handling of said lawsuit in Kentucky. In her complaint, plaintiff alleges defendant 'was guilty of negligence, gross negligence and fraudulent conduct in failing in the performance of his duties in the representation of said estate and in the prosecution of said appeal, as a direct and proximate result of which said appeal was dismissed on motion of defendant without hearing on the merits'. A summons and a copy of the complaint were served

upon defendant by registered mail on December 11, 1967, this service being made by order of court under GCR 1963, 105.8."

Defendant moved for accelerated judgment contending that the Michigan courts lacked jurisdiction. The trial court denied defendant's motion ruling that plaintiff had shown a sufficient basis for limited personal jurisdiction over defendant under MCLA § 600.705 (2) (Stat Ann 1962 Rev § 27A.705[2]). Further, the court ruled that there was no basis for limited personal jurisdiction under MCLA § 600.705 (1) (Stat Ann 1962, Rev § 27A.705[1]).

Upon appeal, the Court of Appeals affirmed the ruling of the trial court in denying the motion for accelerated judgment, but, in so doing, reversed the trial court's holding that there was no jurisdiction under MCLA § 600.705(1) (Stat Ann 1962 Rev § 27A.705[1]). The Court of Appeals upon such determination held that it was unnecessary to decide whether there was jurisdiction under MCLA § 600.705(2) (Stat Ann 1962 Rev § 27A.705[2]). We granted leave to appeal, 383 Mich 822.

The issue involved is whether the Jackson County Circuit Court has jurisdiction over the defendant under either MCLA § 600.705 (1) or (2) (Stat Ann 1962 Rev §27A.705[1] or [2]), given the facts stipulated to in this case.

## I.

In order to determine jurisdiction in this case, we must attempt to ascertain the legislative purpose of the long-arm statute. Perhaps the best discussion is found in *McGee* v. *International Life Insurance Co.* (1957), 355 US 220 (78 S Ct 199, 2 L Ed 2d 223), where the court upheld jurisdiction of the California courts over a Texas insurance company which held only one policy within the State of California. The

court stated concerning long-arm statutes generally (pp 222, 223):

"Looking back over this long history of litigation a trend is clearly discernible toward expanding the permissible scope of state jurisdiction over foreign corporations and other nonresidents. In part this is attributable to the fundamental transformation of our national economy over the years. Today many commercial transactions touch two or more States and may involve parties separated by the full continent. With this increasing nationalization of commerce has come a great increase in the amount of business conducted by mail across state lines. At the same time modern transportation and communication have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity."

Because of the above recognized changes in commercial conditions, Michigan residents are subject to solicitation by out-of-state concerns for a wide variety of products and services. The legislature, in enacting the statute, has attempted to provide Michigan residents a local remedy for injuries arising out of such transactions.

We will first deal with plaintiff's claim under subdivision (2): "The doing or causing any act to be done, or consequences to occur, in the state resulting in an action for tort." The trial court found jurisdiction based on this portion of the act. The Court of Appeals did not rule on this point.

Plaintiff in her brief does not cite any cases in support of her contention that there is jurisdiction under this subdivision. She relies, however, on the fact that the statute states in the alternative, "The doing *or* causing any act to be done, *or* consequences to occur * * * ." (Emphasis added.) Plaintiff argues that the consequences of defendant's tort did

occur in this state. However, the logical extension of plaintiff's contention would be that any time any Michigan resident was injured by an act in another jurisdiction there would be tortious consequences in the state, thereby granting to the Michigan resident the right to bring suit in Michigan. We believe that the legislature had a more limited purpose in including this clause.

In construing long-arm statutes, some courts have held that if a product was defectively made outside of the state and the injury occurred within the state, a tortious act did not occur within the state. Thus, in *Feathers* v. *McLucas* (1965), 15 NY2d 443 (209 NE2d 68, 261 NYS2d 8), the court held that the manufacturer of a pressure tank in Kansas that later exploded in New York, had not committed a tortious act within the meaning of the New York statute.

The Illinois court in *Gray* v. *American Radiator & Standard Sanitary Corporation* (1961), 22 Ill 2d 432 (176 NE2d 761), held on somewhat similar facts that a tortious act within the meaning of the statute did occur when a valve which was manufactured in Ohio and incorporated into a hot water heater in Pennsylvania, was sold, and later exploded, in Illinois.

In the commentary to MCLA § 600.715, Professor Carl S. Hawkins states:

"It should be noted that the Michigan statute predicates jurisdiction not only on acts done or caused to be done within the state, but also on 'causing * * * consequences to occur' in the state. Interpreted literally, this means that a non-resident defendant who causes injury to occur within Michigan may be subjected to Michigan jurisdiction even though he has never been within the state or himself done any act physically within the state. This sug-

gests the typical products liability case, in which there has been some disagreement over the power of states to reach the non-resident defendant."

Thus, it appears the Michigan statute was designed to insure that the Michigan courts would apply the results found in the Illinois case and not those applied in the New York case. Moreover, this section of the statute appears to be directed at providing redress for tort injuries caused by out-of-state manufacturers and not for cases involving an attorney-client relationship. The statute does not mean, and cannot consistently with due process provisions mean, that any time an act occurs affecting a Michigan resident there are consequences in the state, granting jurisdiction over the tortfeasor.

The tort for which plaintiff is suing is malpractice. The alleged malpractice occurred when the defendant failed to perfect an appeal. This occurred in Kentucky. Thus, unlike the *Gray* case, the injury did not occur in the state of plaintiff's residence. The consequences that occurred were that plaintiff was denied her right for an appeal. But that appeal was in a Kentucky court, and not in a Michigan court. We, therefore, hold there is no jurisdiction in the Michigan courts under MCLA § 600.705 (2) (Stat Ann 1962 Rev § 27A.705[2]).

## II.

Turning now to the construction to be given to the jurisdiction provided in MCLA § 600.705(1) (Stat Ann 1962 Rev § 27A.705[1]) : "The transaction of any business within the state," we find only limited application of this section in the cases examined. It would appear that only commercial transactions have been involved.

In *International Shoe Co.* v. *Washington* (1945), 326 US 310 (66 S Ct 154, 90 L Ed 95), the United States Supreme Court upheld the jurisdiction of the

State of Washington over the International Shoe Company, a Delaware corporation. In discussing jurisdiction, the court stated (p 316):

"Historically the jurisdiction of courts to render judgment *in personam* is grounded on their de facto power over the defendant's person. Hence his presence within the territorial jurisdiction of a court was prerequisite to its rendition of a judgment personally binding him. *Pennoyer* v. *Neff* [1877], 95 U.S. 714, 733 [24 L Ed 565]. But now that the *capias ad respondendum* has given way to personal service of summons or other form of notice, due process requires only that in order to subject a defendant to a judgment *in personam,* if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' "

While this statement has often been quoted, the courts have rarely considered the fairness factor in deciding jurisdictional questions. We believe that this is an important factor to consider. Precisely because there has been a tremendous increase in interstate commerce and interstate contacts, the courts must give consideration to the question of fairness in deciding jurisdictional questions, and necessarily decisions must be reached on a case-by-case basis.

Defendant in this case is an attorney. He is not engaged in the type of business that is interstate in nature. The practice of law is a profession and its uniqueness distinguishes it from all other endeavors. Each state, by statute or rule, governs the practice of law within its territorial boundaries. An attorney cannot practice law in any state without first being authorized to do so in compliance with the statutes or rules governing such matters. There is no showing that the defendant herein was ever ad-

mitted to the practice of law in this state. In fact, a perusal of the membership of lawyers of this state shows he was not so admitted.[2]  Thus, this case is distinguishable from *Dornbos* v. *Adkins Transfer Company, Inc.* (1968), 9 Mich App 515, where the Court of Appeals upheld jurisdiction. The court stated (p 520):

" 'These defendants are in the business of carrying goods in interstate commerce. It is reasonable to assume that they solicit and hopefully anticipate such business. They are in the position of being able to protect themselves from the consequences of their own derelictions. They understand that the nature of their business requires them to have the care and custody of the products and possessions of residents of other States. It is foreseeable that their negligent handling of these products and possessions may have tortious consequences in other States.' "

Moreover, this case is unlike *Nationwide Motorist Association of Michigan, Inc.* v. *Nationwide Motorist Association, Inc.* (WD Mich, 1965), 244 F Supp 490 where the United States District Court upheld jurisdiction under the Michigan statute. In that case the plaintiff sued the defendant for fraud in inducing the plaintiff to sign certain contracts and in inducing four individuals to leave their prior positions and take jobs with the plaintiff. The defendant moved to quash the complaint on grounds of lack of jurisdiction, and the court denied the motion. Judge Fox pointed out that an agent of the defendant had met with the plaintiff in Michigan concerning the sale of the Michigan franchise. The defendant had come to Michigan on several occasions specifically to discuss the franchise.

---

[2] Michigan State Bar Journals, Vol 46 (June 1967) and Vol 47 (June 1968).

In the instant case, defendant Horen never came to the State of Michigan solely for the purpose of meeting the plaintiff. Defendant had appeared in Michigan on two separate occasions to lecture at seminars of lawyers. The seminars were in Saginaw and Detroit. The defendant did meet with the plaintiff while he was in Detroit participating in the second seminar. This was only incidental to his main purpose in being here—that of lecturing at the seminar. The contract of employment that was entered into in this case was executed in the State of Kentucky (Exhibit E, hereinbefore quoted). We believe that these two contacts within the State of Michigan are insufficient to meet the requirements of doing business under the Michigan statute. We believe that to allow jurisdiction in this case would violate the precept of fundamental fairness as set forth in *International Shoe, supra.*

Although plaintiff has not cited to us any case upholding jurisdiction where defendant had only a single contact within a jurisdiction, we are aware that there are cases where such jurisdiction has been upheld. We are not setting down a general rule that one or two contacts will in all cases be insufficient for jurisdiction under the Michigan statute. But, such contacts as here noted with a professional person do not satisfy the statute.

For example, in *McGee* v. *International Life Insurance Co., supra,* the court did uphold jurisdiction with a single contact. However, *McGee* involved the breach of an insurance contract by an out-of-state insurance company It would have been very burdensome for the plaintiff to go out of the state to pursue her remedy. On the one side was the single plaintiff who had recently lost her son. On the other side was an insurance corporation. All of the essen-

tial evidentiary facts were discoverable in the plaintiff's home state. Moreover, the state pointed out the manifest interest in the State of California of providing redress for its citizens when insurers refuse to pay their claims.

In this case, however, we have two individuals. The relationship was not one of a commercial nature but a professional one—attorney and client. The evidence concerning the alleged malpractice is more likely to be discovered in Kentucky than in Michigan. Thus, we think that *McGee* is distinguishable on its facts.

We, therefore, hold that there is no jurisdiction under MCLA § 600.705 (1) (Stat Ann 1962 Rev § 27A.705[1]), and reverse the judgment of the trial court and of the Court of Appeals. Costs to defendant.

T. E. BRENNAN, J., concurred with SWAINSON, J.