**TIDY CAR INTERNATIONAL, INC., Plaintiff,**

v.

**Gary T. FIRESTINE, Defendant.**

**No. 92–CV–76339–DT.**

United States District Court, E.D. Michigan, S.D.

Jan. 5, 1993.

Steven M. Raymond, May, Simpson & Strote, Bloomfield Hills, MI, for plaintiff.

Larry E. Coey, Michelle L. Riske, Elyria, OH, for defendant.

## MEMORANDUM OPINION AND ORDER

ZATKOFF, District Judge.

This matter is before the Court on defendant's, Gary T. Firestine's ("Firestine" or "defendant"), motion to quash service of process, motion to dismiss for lack personal jurisdiction, and, in the alternative, motion for change of venue. Plaintiff, Tidy Car International, Inc.[1] ("Tidy Car" or "plaintiff"), filed a timely reply brief that addressed Firestine's various motions. Fire-

---

**1.** Tidy Car International, Inc., is a subsidiary of Ziebart International Corporation. Plaintiff's Complaint, Exhibit C and Exhibit D.

stine filed a single reply brief which was both untimely under the Local Rules of the Eastern District of Michigan and of an unauthorized length. Tidy Car did not object to Firestine's reply brief. In the interest of justice, the Court will consider Firestine's reply brief. Pursuant to E.D.Mich. LR 7.1(e)(2), the Court ORDERS that Firestine's motions be disposed of upon the briefs that the parties have filed and without the Court entertaining oral arguments. For the reasons set forth below, Firestine's motion to dismiss for lack of personal jurisdiction is granted.[2]

## I. BACKGROUND

In April 1978, Firestine entered into an "Associate Dealer Agreement" ("Agreement") with Tidy Car, Inc., wherein Firestine obtained all the rights and privileges as a Tidy Car Independent Operator. The agreement was signed in Toronto, Ontario, Canada. Tidy Car, Inc., was a Canadian corporation with its headquarters in Toronto. Tidy Car, Inc., also had offices in Buffalo, New York, and this is where Firestine purchased its Tidy Car supplies. In addition, the Agreement specified that the law of the State of New York would govern how the contract was to be construed.

In August 1989, Tidy Car, Inc., sold and assigned all of its right, title, and interest in its business, including rights in the Agreement, to Plaintiff Tidy Car. Plaintiff's Complaint ¶ 10. Tidy Car is a Michigan Corporation with its principal place of business in Troy, Michigan. Plaintiff's Complaint ¶ 3. Tidy Car is in the business of licensing, via written licensing agreements, the use of its distinctive Tidy Car name and other registered trademarks and service marks and distinctive process devel-

oped by Tidy Car for maintaining the interior and exterior of automobiles and trucks. Plaintiff's Complaint ¶ 3.

On October 28, 1992, Tidy Car filed suit in this Court against Firestine. This suit arises out of defendant's alleged use of a product known as "Rust Evader."[3] Tidy Car did not approve of its tradename being associated with the sale of "Rust Evader." Plaintiff's Complaint ¶ 12 and Exhibit B. Tidy Car alleges in its complaint that Firestine continued to use "Rust Evader" at his shop in Ohio and that such use violated ¶ 10(c) of the Agreement.[4] Based on this, in a letter dated 26 August 1992, Tidy Car informed Firestine that the Agreement would be terminated on 28 September 1992 and that by 28 September 1992, Firestine had to remove all Tidy Car identification and materials from his premises and that Firestine had to cease using any reference in any way to Tidy Car trademarks, trade names, and logos. In the present action, Tidy Car seeks a declaratory judgment that Firestine has no further rights under the Agreement; an order requiring Firestine to cease using the Tidy Car trademarks, trade names, service marks, and systems; an order requiring Firestine to account for his gross sales since 28 September 1992; an order allowing Tidy Car to audit Firestine's books; and damages for infringement of Tidy Car's trademarks.

## II. OPINION

### A. *Standard of Review*

It is axiomatic that Tidy Car bears the burden of establishing that personal jurisdiction exists in this Court. *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991) (citing *McNutt v. General Motors*

---

**2.** In so holding, Firestine's motion to quash service and motion for change of venue are MOOT. In addition, Tidy Car has filed a motion for a preliminary injunction that also is MOOTED by this Memorandum Opinion and Order.

**3.** "Rust Evader" is an electronic corrosion control device which was developed from the scientific principle of cathodic corrosion protection. Tidy Car believes that this scientific principle is only valid when it is applied to stationary objects which have continuous contact with the ground or water, such as bridges and pipelines.

Based on its own research and that of independent corrosion experts, Tidy Car concluded that this technology did not apply to vehicles. Plaintiff's Complaint, Exhibit B.

**4.** Paragraph 10(c) of the Agreement provided that Firestine agreed to:

deal with his customers in a fair and businesslike manner and to provide high quality and efficient service in keeping with the policies of the Company.

*Acceptance Corp.*, 298 U.S. 178, 189, 56 S.Ct. 780, 785, 80 L.Ed. 1135, 1141 (1936); *accord Am. Greeting Corp. v. Cohn*, 839 F.2d 1164, 1168 (6th Cir.1988); *Weller v. Cromwell Oil Co.*, 504 F.2d 927, 929 (6th Cir.1974)). Furthermore, once Firestine filed its properly supported motion for dismissal, Tidy Car "may not stand on ... [its] pleadings, but must, by affidavit or otherwise, set forth specific facts showing that the court has [personal] jurisdiction [over defendant]." *Theunissen*, 935 F.2d at 1458 (citing *Weller*, 504 F.2d at 930). Here both Firestine and Tidy Car have submitted affidavits. In addition, Tidy Car submitted a summary of purchases which Firestine has made from Tidy Car's Troy, Michigan location. In response to this summary and Tidy Car's affidavit,[5] Firestine submitted a second affidavit with his reply brief.

Accordingly, the Court has before it a properly supported 12(b)(2) motion and opposition thereto. At this stage of the proceedings the Court has three options:

> [I]t may decide the motion upon the affidavits alone; it may permit discovery in aid of deciding the motion; or it may conduct an evidentiary hearing to resolve any apparent factual questions.

*Theunissen*, 935 F.2d at 1458 (citing *Serras v. First Tennessee Bank Nat. Ass'n*, 875 F.2d 1212, 1214 (6th Cir.1989)). It is within the Court's discretion to decide which method it will employ in deciding the motion. *Theunissen*, 935 F.2d at 1458 (citations omitted). "However, the method selected will affect the burden of proof the plaintiff must bear to avoid dismissal.... Where the court relies solely on the parties affidavits to reach its decision, the plaintiff must make only a *prime facie* showing that personal jurisdiction exists in order to defeat dismissal." *Id.* (citations omitted). In addition, "the pleadings and affidavits submitted on a 12(b)(2) motion are received in a light most favorable to the plaintiff." *Id.* at 1459 (citations omitted). "[H]owever, the court disposing of a 12(b)(2) motion ... [cannot] weigh the controverting assertions of the party seeking dismissal." *Id.* (citations omitted). Because the Court will decide Firestine's motion on the affidavits submitted, it is under the parameters set forth above that the Court will analyze the instant motion.

### B. Personal Jurisdiction

Both Tidy Car and Firestine agree that under Rule 4(e) of the Federal Rules of Civil Procedure[6] that the Court must look to the Michigan long-arm statute, M.C.L.A. § 600.705 in determining whether personal jurisdiction exists in the case at bar.[7] M.C.L.A. § 600.715(1) provides:[8]

> The existence of any of the following relationships between an individual or his agent and the State shall constitute a

---

**5.** Nancy McMath swore out the affidavit for Tidy Car. She is the Director of Credit, Collection & Licensing for Tidy Car. McMath Affidavit ¶ 1.

**6.** Rule 4(e) states:

> Whenever a statute of the United States or an order of court thereunder provides for service of a summons, or of a notice, or of an order in lieu of summons upon a party not an inhabitant of or found within the state in which the district court is held, service may be made under the circumstances and in the manner prescribed by the statute or order, or, if there is no provision stated in this rule. Whenever a statute or rule of court of the state in which the district court is held provides (1) for service of a summons, or of a notice, or of an order in lieu of summons upon a party not an inhabitant of or found within this state, or (2) for service upon or notice to such a party to appear and respond

or defend in an action by reason of the attachment or garnishment or similar seizure of the party's property located within the state, service may in either case be made under the circumstances and in the manner prescribed in the statute or rule.

**7.** In addition, both parties agree that the facts in this case do not allow the Court to assert general personal jurisdiction over Firestine. "'Specific' jurisdiction contrasts with 'general' jurisdiction, pursuant to which 'a State exercises personal jurisdiction over a defendant in a suit not arising out of or related to the defendant's contacts with the forum.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 n. 15, 105 S.Ct. 2174, 2182 n. 15, 85 L.Ed.2d 528 (1985) (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n. 9, 104 S.Ct. 1868, 1872 n. 9, 80 L.Ed.2d 404 (1984)).

**8.** Both parties inadvertently cited the Michigan long-arm statute as § 600.705(1).

sufficient basis of jurisdiction to enable a Court of record of this State to exercise limited personal jurisdiction over the individual and to enable the Court to render personal judgments against the individual or his representative arising out of an act which creates any of the following relationships:

(1) The transaction of any business within the State.

In *Sifers v. Horen*, 385 Mich. 195, 188 N.W.2d 623 (1971), the Michigan Supreme Court stated that the word "any" which is found in M.C.L.A. § 600.715(a) "means just what it says. It includes 'each' and 'every'.... It comprehends that 'slightest.'" *Id.* at 199 n. 2, 188 N.W.2d 623. *See also Lanier v. American Bd. of Endodontics*, 843 F.2d 901, 905–906 (6th Cir.1988). Because Firestine does not dispute that he comes within § 600.715(1), the Court will assume that it would have personal jurisdiction under the Michigan long-arm statute. "However, constitutional concerns of due process limit the application of this state law." *Theunissen*, 935 F.2d at 1459 (citation omitted).

Both parties agree as to the substantive law which governs the resolution of the issue of personal jurisdiction which is before the Court.

First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Theunissen*, 935 F.2d at 1460 (quoting *LAK, Inc. v. Deer Creek Enterprises*, 885 F.2d 1293, 1299 (6th Cir.1989), *cert. denied*, 494 U.S. 1056, 110 S.Ct. 1525, 108 L.Ed.2d 764 (1990)) (citing *Southern Machine Co. v. Mohasco Industries, Inc.*, 401 F.2d 374, 381 (6th Cir.1968) (hereinafter "*Southern Machine* test")).

Tidy Car relies on *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) in support of its conten-

tion that Firestine has purposefully availed himself to the privilege of acting within the state of Michigan. In *Burger King*, the Supreme Court, per Justice Brennan, set forth a concise but comprehensive review of the Supreme Court's personal jurisdiction jurisprudence which is worthy of being repeated here. The Supreme Court stated that:

The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful "contacts, ties, or relations." By requiring that individuals have "fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign," ... the Due Process Clause "gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit...."

Where a forum seeks to assert specific jurisdiction over an out-of-state defendant who has not consented to suit there, this "fair warning" requirement is satisfied if the defendant has "purposefully directed" his activities at residents of the forum ... and the litigation results from alleged injuries that "arise out of or relate to" those activities....

We have noted several reasons why a forum legitimately may exercise personal jurisdiction over a nonresident who "purposefully directs" his activities toward forum residents. A State generally has a "manifest interest" in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors.... Moreover, where individuals "purposefully derive benefit" from their interstate activities ... it may well be unfair to allow them to escape having to account in other States for consequences that arise proximately from such activities.... And because "modern transportation and communications have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity," it usually will not be unfair to subject him to the

burdens of litigating in another forum for disputes relating to such activity....

Notwithstanding these considerations, the constitutional touchstone remains whether the defendant purposefully established "minimum contacts" in the forum State.... "[T]he foreseeability that is critical to due process analysis ... is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there...." In defining when it is that a potential defendant should "reasonably anticipate" out-of-state litigation [we have stated that] ...:

> The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with a forum State. The application of that rule will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.

This "purposeful availment" requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of "random," "fortuitous," or "attenuated," contacts ... or of the "unilateral activity of another party or a third person...."

Jurisdiction in these circumstances may not be avoided merely because the defendant did not *physically* enter the forum State.

471 U.S. at 470–475, 105 S.Ct. at 2181–184 (citations omitted).

The Court went on and stated that:

[W]e have emphasized the need for a "highly realistic" approach that recognized that a "contract" is "ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction...." It is these factors—prior ne-

gotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing—that must be evaluated in determining whether the defendant purposefully established minimum contacts within the forum.

471 U.S. at 477, 105 S.Ct. at 2185 (citations omitted).

Tidy Car cites to the following contacts which Firestine has with Michigan in support of Tidy Car's argument that Firestine has purposefully availed to the benefits of Michigan's laws: 1) Firestine made periodic purchases of products from Tidy Car in the State of Michigan; 2) Firestine made monthly payments to Tidy Car in Michigan to cover royalties owed pursuant to the Agreement; and 3) Firestine wrote letters and made telephones calls to Tidy Car's Michigan Office.[9]

■ The fact that Firestine made his royalty payments in Michigan and the fact that Firestine purchased a few products from Michigan are insufficient to establish purposeful availment in this case. As stated above, the following factors are relevant in the Court's determination of whether Firestine purposefully established minimum contacts in the State of Michigan: 1) prior negotiations; 2) contemplated future consequences; 3) terms of the contract; and 4) the parties' actual course of conduct. *Burger King, supra.*

■ Here, it is not disputed that the Agreement was signed in Toronto, Ontario, Canada in April 1978. Defendant's Brief in Support of Motion to Dismiss at 3; Defendant's Reply Brief at 3. At that time, Tidy Car, Inc., was a Canadian corporation with its headquarters in Toronto and offices in Buffalo, New York. Thus, during the negotiations and the signing of the Agreement it cannot be said that Firestine purposefully established minimum contacts within Michigan, because there was absolutely no connection with the State of Michigan. In addition, in 1978, the contemplat-

---

**9.** "Telephone conversations and letters are insufficient to fulfill" purposeful availment. *Michigan Coalition of Radioactive Material*

*Users, Inc. v. Griepentrog,* 954 F.2d 1174, 1177 (6th Cir.1992) (citations omitted).

ed future consequences could only be that Firestine would have contact with the Nation of Canada and the State of New York. Accordingly, contemplated future consequences does not lead the Court to find that Firestine purposefully established minimum contacts with the State of Michigan.

 Examining the terms of the Agreement, the Court finds that this factor also weighs in the favor of not finding purposefully availment. As the Supreme Court stated in *Burger King* "[n]othing in our cases ... suggests that a choice-of-law *provision* should be ignored in considering whether a defendant has 'purposefully invoked the benefits and protections of a State's law' for jurisdictional purposes ... [a]lthough such a provision standing along would be insufficient to confer jurisdiction...." *Burger King*, 471 U.S. at 481, 105 S.Ct. at 2187 (emphasis in original). Here, the Agreement provided that the law of the State of New York would govern the construction of the Agreement. Again, the Court cannot find that, by the terms of the contract, Firestine purposefully availed himself to the benefits and protections of the State of Michigan's law, and thus this factor weighs against finding that Firestine purposefully established minimum contacts within Michigan.

 The last factor, the parties' actual course of conduct, is the only factor which can be said to arguably weigh in favor of finding minimum contacts. Since August 1989, Tidy Car has being a Michigan corporation and Firestine has purchased some products from Michigan. However, Tidy Car did not have the Agreement changed to require that the State of Michigan's laws would apply to the Agreement. In addition, Firestine had no say in whether Tidy Car, Inc., would be bought out by Tidy Car International, which allowed Tidy Car to become a Michigan corporation with offices in Michigan. This is a classic example of

where a defendant is haled into a jurisdiction based on a unilateral act of another party. Personal jurisdiction will not be found in such a case. *Burger King*, 471 U.S. at 474, 105 S.Ct. at 2183.[10] Moreover, from 1978 through August 1989, Firestine had no contacts with the State of Michigan.

Accordingly, after weighing all of the relevant factors and viewing the facts in the light most favorable to Tidy Car, the Court holds that Firestine has not purposefully established minimum contacts with the State of Michigan under the facts in this case.

## CONCLUSION

For all of the reasons set forth above, defendant Firestine's motion to dismiss for lack of personal jurisdiction is hereby GRANTED.

IT IS SO ORDERED.

---

**10.** To hold otherwise in this case would mean that any person, who signed an agreement similar to the one in this case, would be subject to the jurisdiction in any of the fifty states of the United States simply because the original corporation was bought out by another corporation and the defendant ordered some supplies from the new corporation, supplies which the defendant could not get from anywhere else. This would not allow individuals to have fair warning that a particular activity—signing an agreement—may subject them to the jurisdiction of a foreign sovereign which is required under the Due Process Clause.