**AMERICAN INTERNATIONAL AIRWAYS, INC. and Conrad Kalitta, Individually, Plaintiffs,**

v.

**KITTY HAWK GROUP, INC., Aircraft Leasing, Inc. and M. Thomas Christopher a/k/a M. Tom Christopher, jointly and severally, Defendants.**

Civ. A. No. 93–72749.

United States District Court, E.D. Michigan, S.D.

Oct. 18, 1993.

George Kelsey, Ypsilanti, MI, for plaintiffs.

James A. Sanborn, Stephanie Davis, Dickinson Wright Moon Van Dusen & Freeman, Detroit, MI, Mark Alan Calhoun, Thomas C. Jones, Dallas, TX, for defendants.

## ORDER DENYING DEFENDANTS' MOTION TO DISMISS

GADOLA, District Judge.

Defendants, Kitty Hawk Group, Inc. ("Group"), Aircraft Leasing, Inc., and M. Thomas Christopher filed a motion for summary judgment on July 1, 1993. Plaintiffs filed a response July 12, 1993. Defendants filed a reply July 19, 1993. Oral argument was heard September 22, 1993.

### I. Facts

Plaintiff, American International Airways, Inc. ("AIA"), is a Michigan corporation solely owned by plaintiff, Conrad Kalitta. Defendant M. Thomas Christopher· is the president, sole stockholder and owner of defendant Group, a Texas corporation. Group is the parent and sole stockholder of defendant, Aircraft Leasing, Inc. and Kitty Hawk Aircargo ("Aircargo") a/k/a Postal Air. Aircraft Leasing is the owner of aircraft that is leased and operated by Aircargo at Willow Run Airport in Ypsilanti, Michigan. Aircargo maintains a sales office at the airport.

On June 27, 1991, Christopher arrived at the offices of AIA in Ypsilanti, Michigan and proposed to Kalitta that AIA and Group enter into an joint undertaking for the purpose of obtaining contracts from the United States Postal Service to transport mail by air. Prior to this date, AIA had been transporting freight by air throughout the United States for Christopher's companies. On the same· day, Christopher and Kalitta signed an agreement on behalf of Group and AIA to participate in such an undertaking. To meet with the extensive demands of the joint undertaking, Christopher was named as a service representative of AIA. Over the next 21 months, Christopher traveled to Michigan in this capacity.

Between June 1991 and March 1993, the joint undertaking obtained and performed two contracts with the U.S. Postal Service. In July 1992, the parties bid on a third contract: the ANET–93–01 contract. The bid for the ANET–93–01 contract contained several provisions. Should Group be awarded the contract the following events were to take place: (1) AIA was to become 50% owner of Aircargo; (2) all non-postal operations were to be transferred out of Aircargo; (3) the name was to be changed to Postal Air, Inc. (4) Postal Air, Inc. was to be staffed by a combination of AIA and Group managers and employees.

In September 1992, the U.S. Postal Service awarded Group the ANET–93–01 contract. Because this contract required more equipment than the joint undertaking owned, AIA, at the request of Group, purchased a Boeing 727–23 aircraft.

Prior to the performance of the ANET–93–01 contract, a dispute arose as to the bidding procedure. In the course of the ensuing litigation, Group and consequently the joint venture, were enjoined from performing the contract.

The instant lawsuit arises out of the negotiations that followed the loss of the ANET–93–01 contract. Plaintiffs allege that defendants Christopher and Group, agreed to purchase the Boeing aircraft from plaintiff AIA at a price equaling AIA's out-of-pocket expenses, not to exceed $2,250,000. Plaintiffs further allege that the defendants breached that agreement, and seek specific performance.

In the instant motion to dismiss, defendants allege that they have conducted no business within the State of Michigan and should not be subject to personal jurisdiction here.

## II. Analysis

■ The burden is on the plaintiffs to establish the existence of personal jurisdiction over the defendants. *Welsh v. Gibbs,* 631 F.2d 436, 438 (6th Cir.1980). However, when determining whether there have been sufficient contacts with the forum state to establish personal jurisdiction, the court must interpret the pleadings and affidavits in the light most favorable to plaintiffs. *Id.*

■ A court may exercise personal jurisdiction over an out-of-state defendant only if the defendant is amenable to service of process under the state's long-arm statute, and only if the exercise of personal jurisdiction would not deny the defendant his due process of law. *Omni Capital Int'l Ltd. v. Rudolf Wolf & Co., Ltd.,* 484 U.S. 97, 104, 108 S.Ct. 404, 409, 98 L.Ed.2d 415 (1987).

Michigan's long arm statute regarding general jurisdiction, Mich.Comp.Laws Ann. § 600.711, provides that "[t]he carrying on of a continuous and systematic part of a corporation's general business within the state, shall constitute a sufficient basis of jurisdiction over the corporation to enable the courts of record of [Michigan] to exercise general jurisdiction over the corporation and to enable such courts to render personal judgments against the corporation." Michigan's long-arm statute regarding specific jurisdiction, Mich.Comp.Laws Ann. § 600.715, provides that "[t]he transaction of any business within the state ... shall constitute a sufficient basis of jurisdiction to enable the courts of record of [Michigan] to exercise limited personal jurisdiction over such corporation and to enable such courts to render personal judgments against such corporation."

■ The principles of general jurisdiction may be applied when the defendant's forum contacts are so substantial that the plaintiff's cause of action need not be related to the defendant's in-state activities. *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414 n. 9, 104 S.Ct. 1868, 1872 n. 9, 80 L.Ed.2d 404 (1984). Specific jurisdiction is applied when a defendant who would not otherwise be subject to general jurisdiction, has transacted business within the forum and the plaintiff's cause of action arises out of that transaction. *Id.* at n. 8.

For the following reasons, the court finds that in this case the requirements of both general jurisdiction and specific jurisdiction have been satisfied.

## A. General Jurisdiction

■ By virtue of the ongoing activities of its subsidiary Aircargo, defendants are subject to the general jurisdiction of this court. Defendant Christopher is the sole owner of Group, which is the sole stockholder of its subsidiary Aircargo. Christopher, as president of Group, controls both companies himself. A parent company may be subject to jurisdiction based on the activities of its subsidiary. *Donatelli v. National Hockey League,* 893 F.2d 459, 467 (1st Cir.1990).

■ Before the court can exercise jurisdiction over a parent company, however, there is a presumption of corporate separateness that must be overcome by clear evidence that the parent in fact controls the activities of the subsidiary. *Escude Cruz v. Ortho Pharmaceutical Corp.,* 619 F.2d 902, 904 (1st Cir. 1980). In addition, it must be shown that the parent corporation has exercised control over the subsidiary greater than that normally associated with common ownership and directorship. *Hargrave v. Fibreboard Corp.,* 710 F.2d 1154, 1106 (5th Cir.1983).

■ In the instant case, Christopher made all business decisions regarding Aircargo, including the decision that Aircargo maintain an office at Willow Run Airport in Ypsilanti, Michigan. Where a corporation is responsible for its subsidiary's decision to undertake in-state activities, the parent corporation should, in all fairness, be within the state court's jurisdictional reach. *Donatelli,* 893 F.2d at 466.

■ Christopher's control over Aircargo was so complete that he was able to sign away half of the company. Christopher alone decided that if Group was awarded the ANET–93–01 contract, AIA would assume 50% ownership of Aircargo. Christopher and Group thereby exercised control over Aircargo that far exceeded that which is normally associated with common ownership. Therefore, this court is authorized to exercise general jurisdiction over the defendants by virtue of the ongoing and continuous activities of their subsidiary Aircargo.

## B. Specific Jurisdiction

■ The Michigan Supreme Court has construed the "transaction of any business," to mean "the slightest act of doing business in Michigan." *Sifers v. Horen,* 385 Mich. 195, 199, 188 N.W.2d 623 (1972). This standard is easily met in this case. Christopher and Group carried on a business enterprise with a Michigan corporation for at least 21 months and thereby purposely availed themselves of being haled into court here. The question remaining, therefore, is whether the cause of action in this case, that is, the breach of contract, arises out of that transaction of business.

A cause of action which lies in the wake of the business transaction, arises from it. *Lanier v. American Board of Endodontics,* 843 F.2d 901, 909 (6th Cir.1988). The cause of action in the case at bar, arises out of the settlement agreement. The settlement agreement is a product of the joint undertaking, and therefore lies in the wake of a business transaction in the forum state.

■ Once it has been determined that the Michigan long-arm statute has been satisfied, attention must be directed to whether the defendants have established "minimum contacts" with the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). A defendant is subject to *in personam* jurisdiction when contacts with the "forum State are such that [the defendant] should reasonably anticipate being haled into court there." *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). With respect to interstate contractual obligations, parties who "reach out beyond one state and create continuing relationships and obligations with citizens of another state" are subject to regulation and sanctions in the other state for the consequences of their activities. *Travelers Health Assn. v. Virginia,* 339 U.S. 643, 647, 70 S.Ct. 927, 929, 94 L.Ed. 1154 (1950).

In the instant case, defendant Christopher initiated contact with plaintiff Kalitta for the purpose of entering into a joint undertaking.

The affidavit of Kalitta states that defendant Christopher drafted the Joint Undertaking Agreement at the offices of AIA in Ypsilanti, Michigan. The parties acted in accordance with the terms of this agreement from June 1991 to March 1993, and successfully completed two contracts for the U.S. Postal Service.

By engaging in a joint undertaking with a Michigan corporation for the rendering of services which originated in Michigan, defendant Christopher reached out beyond his resident state of Texas to create a continuing relationship with plaintiffs, citizens of Michigan. The court therefore finds that Christopher and the defendant corporations did purposely avail themselves of the privilege of conducting business within the state of Michigan and could have reasonably anticipated being haled into court in here.

### ORDER

Therefore, it is hereby **ORDERED** that defendants Kitty Hawk Group, Inc., Aircraft Leasing, Inc. and M. Thomas Christopher's motion to dismiss for lack of personal jurisdiction is **DENIED**.

**SO ORDERED.**