Robert P. **RAFTERY**, as Personal Representative of the Estates of Gregory J. Raftery, Deceased, and Timothy P. Raftery, Deceased, Plaintiffs,

v.

**BLAKE'S WILDERNESS OUTPOST CAMPS, Mount Lake Air Service, the Estate of John Blake, Jr. and John Blake, jointly and severally, Defendants.**

No. 96–71389.

United States District Court,
E.D. Michigan,
Southern Division.

Jan. 7, 1997.

Edmund G. Battersby, Samuel I. Bernstein, Farmington Hills, MI, James J. Raftery, Southfield, MI, for Plaintiffs.

A.T. Lippert, Jr., Gary R. Campbell, Lippert & Humphreys, P.C., Saginaw, MI, for Defendants.

### OPINION AND ORDER

FEIKENS, District Judge.

### A. Background

Defendant John Blake, Jr. ("Blake") and his wife are partners in Blake's Wilderness Outpost Camps ("Blake's Wilderness), through which they have provided camping, fishing, and hunting expeditions in Canada since 1972. (Blake Dep. at 8.) They are also the sole shareholders in Mount Lake Air Service[1] ("Mount Lake"), through which they fly people at their camp into and out of the bush. One of the pilots employed by Mount Lake was their son, John Blake, III ("Johnny"). In July of 1995, three Michigan residents camping at Blake's Wilderness were being flown by Johnny on a plane from Mount Lake when it crashed in Ontario, Canada. That accident, in which Johnny and two of the three passengers on board died, is the basis of this action.

Plaintiff filed a complaint in this federal court based on diversity of citizenship alleging negligence and breach of warranty. Plaintiff's decedents are both Michigan residents, and all defendants are Canadian residents. Process was served upon John Blake, Jr. at the Novi Exposition Center in Novi, Michigan in March 1996. He concedes that he was advertising for Blake's Wilderness while in Michigan and that this court's jurisdiction therefore extends to him and Blake's Wilderness. In this motion he argues that Mount Lake did not solicit business or enter into contracts in the State of Michigan and

1. Officially, the name of the corporation is 749536 Ontario Limited, carrying on business under the name and style of Mount Lake Air Service.

that it should therefore be dismissed for lack of personal jurisdiction.

The issue before me is whether Blake acted as an agent for Mount Lake while advertising for Blake's Wilderness in Michigan. For reasons stated below, I conclude that jurisdiction is established, and Mount Lake's motion to dismiss is consequently denied.

## B. Analysis

■ Limited personal jurisdiction can be established in Michigan over a foreign corporation if it is found that the corporation, or its agent, transacts business within the state. M.C.L.A. § 600.715(1). This "long-arm statute" has been characterized by the Michigan Supreme Court as extending to courts the broadest grant of jurisdiction. *Sifers v. Horen,* 385 Mich. 195, 199, 188 N.W.2d 623 (1971). Therefore, the applicable test is whether due process concerns have been met. *Microelectronic Systems Corporation of America v. Bamberger's,* 434 F.Supp. 168 (E.D.Mich.1977).

■ Due process concerns can be met if a defendant establishes such "minimum contacts" with Michigan that maintenance of the action "does not offend traditional notions of fair play and substantial justice." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474, 105 S.Ct. 2174, 2184, 85 L.Ed.2d 528 (1985). The reasonableness of exercising jurisdiction depends on an evaluation of several factors, including the burden on the defendant, the interests of the forum state in adjudicating the dispute, and the plaintiff's interests in obtaining convenient and effective relief. *World–Wide Volkswagen Corp. v. Woodsen,* 444 U.S. 286, 292, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980). I note that this case involves more than a single act; therefore, the three-part test established in *Southern Machine Company v. Mohasco Industries, Inc.,* 401 F.2d 374, 381 (6th Cir.1968), does not apply, contrary to defendant's contention.

■ At the heart of this issue is advertising undertaken by Blake at the Outdoorama, an annual nine-day event in late winter at the Novi Exposition Center in Novi, Michigan. With the exception of one year in the early 1980's, Blake has come to the Outdoorama every year since 1978. (Blake Dep. at 10–13.) In his six-hour deposition, Blake painstakingly asserted that advertising done there was limited to Blake's Wilderness, even though the air service was referred to by him and in his brochures. The following dialogue exemplifies the exchanges that took place repeatedly throughout 210 pages of transcript:

> Q. When you would come to the Outdoorama, would you tell prospective business invitees that you were bringing up to Blake's Wilderness Outpost Camp that you owned your own air service and as such you were able to provide more convenient trips for them than other camps could?
>
> A. We said that we do have our own air service, but we're not there advertising our air service.

(Blake Dep. at 18.) Despite Blake's assertions that he did not advertise for Mount Lake while at Outdoorama, the evidence shows that he did in fact conduct business for them.

The brochures distributed by Blake at the Outdoorama in 1990, 1991, 1992, and 1993 advertised "Blake's Wilderness Outpost Camps & Mount Lake Air Service." Blake does not dispute that his ability to fly people into the bush, where they would normally not be able to get without a flight, is part of the appeal of the camp (Blake Dep. at 14), but he contends that reference to an air service was only intended to inform the public that the camps were in remote areas requiring fly-ins to reach them and that Blake's Wilderness had access to an air service to provide that. (Blake Dep. at 18–20). When confronted directly with the brochure, however, Blake was not able to justify this rationale:

> Q. [D]oesn't [the brochure from 1990] specifically indicate that the fly-in would be Mount Lake Air Service?
>
> A. It says that's who we usually deal with.
>
> Q. Where does it say usually? On that document where does it say, Usually we will use Mount Lake Air Service?

A. It doesn't say usually. It says, Fly with Mount lake Air Service to Blake's Wilderness Outpost Camps.

.     .     .     .     .

Q. The front of it refers to both of your companies, Blake's Wilderness Outpost Camps and Mount Lake Air Service, correct?

A. Yes, it does say that. And what it's talking about is that is who Blake's usually contracts with to do the flying, but it also says on the brochure, the reservation forms, is Blake's Wilderness Outpost Camps. You're not booking with Mount Lake.

(Blake Dep. at 55–56.)

In his brief, Blake expounds on this distinction by explaining that Blake's Wilderness operated similarly to a travel agency which arranges and contracts with certain hotels, bus companies, and air services. His point is that a travel agency which includes the name of an airline in advertising a vacation package is certainly not advertising for them, just as Blake's Wilderness is not advertising for Mount Lake. According to Blake, a prospective camper may enter a contract with Blake's Wilderness in Michigan, but Blake's Wilderness was obliged to contract in Canada to provide charter air service to them. This analogy does not hold up to further inspection.

In the 1992 contract with Outdoorama, Blake referred to his exhibit as "Blake's Wilderness Outpost Camps and Mount Lake Air Service." He also described the product he intended to exhibit as "Fishing & Hunting Camps & Air Service." (Plaintiff's Ex. A.) In 1994 and 1995 (the year of the accident), he listed his firm's name on the contract with the Outdoorama organizers as "Blake's Wilderness Outpost Camps and Air Service." (Plaintiff's Ex.'s B and C.) Brochures distributed in Michigan from 1990 through 1993 advertised "Blake's Wilderness Outpost Camp and Mount Lake Air Service." (Plaintiff's Ex.'s E, F, G, and H.) Even though the wording was changed to "Blake's Wilderness Outpost Camps & Air Service" on the brochures in 1994 and 1995 (Plaintiff's Ex.'s I and J), these facts show that Blake was doing more than simply advertising Blake's Wilderness to the total exclusion of Mount Lake.

The facts also show that while recruiting campers in Michigan for Blake's Wilderness, Blake was conducting business for Mount Lake. Blake acknowledges that when he contracted with individuals at the Outdoorama, the overwhelming likelihood was that those individuals would wind up flying with Mount Lake Air Service. (Blake Dep. at 201.) He estimated that Blake's Wilderness required over 200 plane trips in 1995, and that Mount Lakes provided all but four to six of them—or at least 97% of all of Blake's Wilderness flights. (Blake Dep. at 31–33) Finally, while at the Outdoorama, Blake maintained a flight book to keep track of what groups were coming in so he could "tell them what times there is flying available." (Blake Dep. at 42.) Despite his assertions to the contrary, it is evident that when Blake came to the Outdoorama each year, he was carrying on business for both Blake's Wilderness and Mount Lake. I therefore find that Mount Lake has established sufficient contacts for jurisdiction to be established over it.

## C. Conclusion

In light of the fact that Mount Lake benefitted from the business that was conducted for it annually in Michigan since its incorporation in 1988, it is not unduly burdensome for it to return to Michigan to defend itself from charges stemming from its dealings here. The concerns of judicial economy and the interests of the plaintiff in resolving his complaint support a finding of jurisdiction in this court consistent with constitutional due process protection. Therefore, defendant Mount Lake Air Service's motion to dismiss for lack of jurisdiction is denied.

**IT IS SO ORDERED.**